Walter J. Lack, Esq. (SBN 57550)
Rachel M. Lannen, Esq. (SBN 333701)
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4113
Tel: (310) 552-3800 / Fax: (310) 552-9434

Attorneys for Defendant,
DAVID LIRA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No. 3:22-cv-03977-SK |
| Plaintiffs, | |
| v. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT DAVID LIRA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA** |
| DAVID LIRA, an individual, KEITH GRIFFIN, an individual, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL, LLC, a California limited liability company, CHRISTOPHER KAMON, an individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II., a New York corporation, | |
| Defendants. | Complaint Filed: July 6, 2022<br>Motion Date: November 7, 2022<br>Motion Time: 9:30 a.m.<br>Courtroom: C<br><br>[*Filed concurrently with the Declaration of David Lira; Motion to Dismiss Complaint*] |

1

**COMES NOW DEFENDANT DAVID LIRA,** in support of his Motion to Dismiss Plaintiff's Complaint for Improper Venue, or in the Alternative, Transfer Venue to the Central District of California, respectfully requests that judicial notice be taken of the following matters pursuant to Federal Rules of Evidence 201:

## Request for Judicial Notice No. 1

The Complaint in the matter captioned and styled *Edelson PC v. Thomas Girardi, et al.* 20-cv-07115 (N.D. Ill. December 2020). A true and correct copy is attached hereto as **Exhibit 1.**

Judicial Notice may be taken of this matter pursuant to Federal Rules of Evidence 201 subdivision (b).

## Request for Judicial Notice No. 2

The Order Granting Edelson PC's Motion for Conditional Approval of Agreement with Minor Plaintiffs in the matter captioned and styled *In Re: Lion Air Flight JT 610 Crash,* No. 18-cv-07686 (N.D. Ill. November 2018). A true and correct copy is attached hereto as **Exhibit 2.**

Judicial Notice may be taken of this matter pursuant to Federal Rules of Evidence 201 subdivision (b).

## Request for Judicial Notice No. 3

The Chapter 7 Involuntary Petition against Thomas V. Girardi in the Bankruptcy Court for the Central District of California Case No. 2:20-bk-21020-SK. A true and correct copy is attached hereto as **Exhibit 3.**

Judicial Notice may be taken of this matter pursuant to Federal Rules of Evidence 201 subdivision (b).

///

///

1   **Request for Judicial Notice No. 4**

2          The Chapter 7 Involuntary Petition against Girardi Keese in the Bankruptcy

3   Court for the Central District of California Case No. 2:20-bk-21022-SK. A true and

4   correct copy is attached hereto as **Exhibit 4.**

5          Judicial Notice may be taken of this matter pursuant to Federal Rules of

6   Evidence 201 subdivision (b).

7

8   **Request for Judicial Notice No. 5**

9          The Proof of Claim filed by Edelson PC against Girardi Keese in the

10  Bankruptcy Court for the Central District of California Case No. 2:20-bk-21022-SK.

11  A true and correct copy is attached hereto as **Exhibit 5.**

12         Judicial Notice may be taken of this matter pursuant to Federal Rules of

13  Evidence 201 subdivision (b).

14

15                                         **ENGSTROM LIPSCOMB & LACK**

16

17

18  Date: September 20, 2022      _____

19                                         Walter J. Lack
                                           Rachel M. Lannen
20                                         Attorneys for David Lira

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
COMPLAINT FOR IMPROPER VENUE**

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: Lion Air Flight JT 610 Crash | Lead Case No. 18-cv-07686 |
| | This document relates to: |
| | Case No. 1:19-cv-2979<br>Case No. 1:19-cv-2982<br>Case No. 1:19-cv-2987 |
| | Hon. Thomas M. Durkin |

## ORDER GRANTING EDELSON PC'S MOTION
## FOR CONDITIONAL APPROVAL
## OF AGREEMENT WITH MINOR PLAINTIFFS

The Court having reviewed Edelson PC's Motion for Conditional Approval of Agreement with Minor Plaintiffs (dkt. 1360), the Court finds that:

1. Floyd Wisner is an attorney who is competent to represent the interest of minor plaintiffs N.I.R. and A.M.Q (in case 19-cv-2979, by guardian ad litem Septiana Damayanti), T.A.S. and S.C.S. (in case 19-cv-2982, by guardian ad litem Anice Kasim); and M.N. (in case 19-cv-2987, by guardian ad litem Dian Daniaty).

2. The assignment agreement reached by Edelson PC, the minor plaintiffs, and the parties set forth in the document attached as Exhibit 1 to docket entry 1360 ("the Agreement") is fair and reasonable, and in the best interests of all parties to the Agreement including the minor plaintiffs N.I.R., A.M.Q., T.A.S., S.C.S., and M.N.

**THEREFORE, IT IS HEREBY ORDERED:**

1. The Agreement on behalf of the minor plaintiffs N.I.R., A.M.Q., T.A.S., S.C.S., and M.N. is approved and will become effective, according to its terms, upon receipt of additional signatures as set forth in the Agreement. (*See* Agreement ¶¶ 2, 21.) Edelson

PC and the Wisner Law Firm shall a joint status report within seven (7) days after the

Effective Date of the Agreement.

2. The claims of other plaintiffs in other actions consolidated into Case No. 1:18-cv-07686

are unaffected by this order.

3. The court retains jurisdiction to effectuate the Agreement.

DATED: April 6, 2022                              ENTERED:

Thomas M. Durkin
U.S. District Court Judge

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No.: |
| *Plaintiff,* | |
| *v.* | |
| THOMAS GIRARDI, an individual, GIRARDI KEESE, a California general partnership, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL LLC, a California limited liability company, GIRARDI FINANCIAL, INC., a Nevada corporation, DAVID LIRA, an individual, KEITH GRIFFIN, an individual, JOHNSTON HUTCHINSON & LIRA LLP, a California limited liability partnership, ROBERT FINNERTY, an individual, ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, STILLWELL MADISON, LLC, a Delaware limited liability company, and JOHN DOE 1-10, | |
| *Defendants.* | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Edelson PC ("Edelson") brings this lawsuit against Defendants Thomas Girardi,

Girardi Keese, Erika Girardi (a/k/a Erika Jayne), EJ Global LLC, Girardi Financial, Inc., David

Lira, Keith Griffin, Johnston Hutchinson & Lira LLP, Robert Finnerty, Abir Cohen Treyzon

Salo, LLP, California Attorney Lending II, Inc., Stillwell Madison, LLC, and John Doe 1-10 to

recover monies due and owing to itself, as well as to seek the disgorgement of all monies due and owing to all clients of Girardi Keese in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1.      Tom Girardi ("Tom" or "Girardi") and his law firm Girardi Keese ("GK") are on the verge of financial collapse and locked in a downward spiral of mounting debts and dwindling funds. They presently owe tens of millions of dollars to clients, lenders, co-counsel, settlement administrators, and experts, to name only a few, and have tried in vain to forestall the payment of these debts with hollow promises, excuses, misdirection, and outright fraud.

2.      At the heart of this deception is Defendant Girardi and his need to fund outrageous lifestyles for himself and his soon-to-be ex-wife, Erika Jayne ("Erika" or "Jayne"). Tom and Erika have reached celebrity status in the glitz-and-glam world of Hollywood and Beverly Hills. Tom is a well-known and powerful personal injury attorney. Erika is a performer who is perhaps better known for her years-long presence on *The Real Housewives of Beverly Hills*, a show centered on the larger-than-life extravagances of its cast members. To keep up their celebrity status, Tom and Erika must project a public image of obscene wealth at all times, and at whatever the cost.

3.      As a result, and most egregiously, Tom has resorted to embezzling the proceeds of settlements that should have been directed to his clients—including, as the basis for this Complaint, the widows and orphans who lost loved ones in the tragic crash of Lion Air Flight 610—in order to continue funding his and Erika's lavish Beverly Hills lifestyles.

4.      While Erika publicly filed for divorce this month, on information and belief, that

2

"divorce" is simply a sham attempt to fraudulently protect Tom's and Erika's money from those that seek to collect on debts owed by Tom and his law firm GK. This would not be the first attempt by Tom to hide and divert assets. Indeed, in a likely violation of the California Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439), Defendant Jayne's company, Defendant EJ Global, has allegedly received *tens of millions* in "loans" directly from Defendant GK, of which Tom is the sole equity shareholder.

5.      Tom's downward spiral appears to have finally bottomed out. On information and belief, Tom's mounting loans and debt have piled up to such an extent that GK can no longer meet its financial obligations and it is likely that GK will soon not be a going concern. But Tom's litigation financers and other creditors (including Erika) are not the ones who stand to lose the most from the fall of GK. Instead, it's the Lion Air clients (and potentially other clients) who stand to lose everything. That's because, on information and belief, Tom has embezzled and redirected the funds that were due the Lion Air clients (and of lesser importance, Plaintiff Edelson) to his family members, friends, and his and GK's lenders and other creditors.

6.      These family members, friends, lenders and other creditors of Defendants Girardi and GK have not simply been passively receiving funds that could plausibly be construed as valid repayments for loans made or obligations owed. Instead, with Defendants Girardi's and GK's financial woes in full view, these people and entities—including Defendants Lira, California Attorney Lending, and Stillwell Madison—have, on information and belief, with the agreement of Defendants Girardi and GK, structured an inter-creditor agreement amongst themselves that redirects to them any monies received into the bank accounts of Defendant GK. Pursuant to that agreement, on information and belief, Defendants Lira, California Attorney Lending, and Does 1-10 have knowingly demanded and received embezzled funds belonging to

the Lion Air clients and Plaintiff Edelson, despite all the while knowing that those funds belong to the Lion Air clients represented by Defendant GK and Plaintiff Edelson PC (itself counsel of record in the Lion Air litigation).

7.     Girardi's and GK's embezzlement and wrongful transfers to third parties of client funds simply cannot go unchecked. And while the present Complaint is brought in part to enforce Plaintiff's fee agreement with GK, those fees are not the primary focus of this Complaint; rather, this Complaint also seeks to force GK, a firm that pushes the slogan "*We Treat Our Clients Like Family,*" to uphold its fiduciary duty to the surviving families of the victims of Lion Air Flight 610 that it agreed to represent.

8.     In October 2018, Lion Air Flight 610 crashed, killing all 189 individuals on board. Litigation against Boeing followed, and nearly a dozen families, including widows and minor children, retained GK to represent them in seeking to recover for the tragic loss of their loved ones. Plaintiff Edelson PC was later brought in as local counsel to assist in the litigation and settlement process. The litigation was individually settled for those clients in early 2020 for a substantial, but confidential, sum. The proceeds of those settlements were allegedly transferred thereafter from Boeing to GK.

9.     Yet, on information and belief, Girardi, with cover for his actions provided by his former partner David Lira ("Lira") and current partner Keith Griffin ("Griffin"), prevented a significant portion of that money, and potentially all of it, from ever reaching the victims of this horrific crash. Girardi has instead kept it for his own purposes and doled it out to his friends and family, all the while evading attempts by the clients to gain access to it.[1] On information and

---

[1]     As described herein, Edelson only recently learned of the true nature of this situation, and concurrent with the filing of this Complaint, is also filing a Motion for Rule to Show Cause with the Court in *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

belief, the Lion Air settlement proceeds are not the only client funds Girardi has withheld and misappropriated for personal use.

10.    In addition to embezzling his clients' funds, Girardi has also taken massive litigation loans for the stated purposes of funding the successful operation of his law firm (utilizing ongoing cases and his own personal guarantee as collateral). Contrary to that purpose, on information and belief, these loans appear to have been utilized to fund Girardi's and Jayne's personal spending habits. Indeed, the timing of new litigation loans have allegedly corresponded with new "loans" from GK to his wife's company, Defendant EJ Global. As a result of this misuse, millions of dollars in loans have fallen into default, resulting in litigation against Tom, his wife, and his firm.

11.    In a Madoff-inspired attempt to protect his own wealth and appease his aggressive and well-heeled lenders, on information and belief, Girardi has in fact used client settlement funds, including money owed to the families of the victims of Lion Air Flight 610, to pay down loans, leaving the clients with little, if anything.

12.    Defendant California Attorney Lending is one such lender. On information and belief, it has knowingly received embezzled client money from the Lion Air settlements. Similarly, Defendant Stillwell Madison, a lender that recently had a writ of attachment for $5,847,411 placed against GK for a defaulted loan, and that is presently seeking to recover those funds (and potentially has recovered some already), may also be receiving the proceeds of the embezzled client money.[2]

13.    But these two lenders are hardly alone. Numerous other lenders and creditors

---

[2]    Importantly, the Defendants named here are only those that are publicly known. On information and belief, others, included here as Does 1-10, have also improperly received Lion Air client settlement funds and will be identified through discovery and the accounting process. This includes other lenders, co-counsel, referring counsel, and vendors, among others.

have collected or are seeking to collect from Girardi. Yet, on information and belief, Girardi

continues to embezzle funds owed to clients into his own personal and firm bank accounts. In

turn, he continues to use that money to fund his and Erika's lavish lifestyle, release personal

guarantees, pay down loans, route the money to friends and family, and satisfy other outstanding

debts.

14.    By receiving Tom's money, creditors are accepting ill-gotten gains, which they

know or should know was money collected by Girardi through criminal embezzlement of client

funds.

15.    Secondary to the concerns regarding client funds, Defendants GK, Girardi,

Griffin, and Lira have breached enforceable co-counsel agreements with Plaintiff Edelson for the

litigation of cases centralized in *In Re: Lion Air Flight JT 610 Crash*. On information and belief,

the money Plaintiff Edelson is owed is also being misappropriated by Defendants, including by

Defendant California Attorney Lending. California Attorney Lending has accepted illegally

gotten gains it knew or should have known were not the property of GK, but instead belonged to

Edelson PC, such that California Attorney Lending tortiously interfered with the fee contract

between Edelson and GK.[3]

16.    As such, this lawsuit requests that the Court order (1) an accounting of all funds

transferred from Boeing that were intended for any GK client (inclusive of any transfers to third

parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re:*

*Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds;

(2) the disgorgement of all such funds from any Defendant (or any non-party) who is improperly

---

[3]    For the sake of clarity, Plaintiff Edelson *will not* accept any attorneys' fees for its work in
*In Re: Lion Air Flight JT 610 Crash* until a full, court-supervised accounting has been performed
that confirms each and every relevant client has first been paid in full.

in receipt of those funds; (3) the transfer of those funds to the appropriate client recipients; and, *only after those steps have been accomplished* (and any other remedial steps the Court deems warranted), (4) the payment of the contractually required attorneys' fees to Edelson PC.

## PARTIES

17.     Plaintiff Edelson PC is an Illinois professional corporation operating as a law firm, with its principal place of business located at 350 North LaSalle, 14th Floor, Chicago, Illinois 60654. Edelson PC also has offices located at 123 Townsend Street, Suite 100, San Francisco, California 94107.

18.     Defendant Thomas Girardi is a natural person and resident of the State of California. Thomas Girardi is the sole equity partner of Defendant GK.

19.     Defendant GK is a general partnership formed under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. GK does business in the State of Illinois and in this District.

20.     Defendant Erika Girardi, also known as Erika Jayne, is a natural person and resident of the State of California. Jayne is the wife of Defendant Girardi. On information and belief, Jayne has a legal and financial interest in a community property interest in GK and the actions of her husband, Girardi, taken for the benefit of their marital community property. Jayne is also a principal owner of Defendants EJ Global and Girardi Financial.

21.     Defendant EJ Global LLC is a limited liability company existing under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. EJ Global LLC does business in the State of Illinois and in this District.

22.     Defendant Girardi Financial, Inc. is a corporation existing under the laws of the

State of Nevada, with its principal place of business located at 1126 Wilshire Boulevard, Los

Angeles, California 90017. The President of Girardi Financial is Defendant Girardi, the

Secretary is Defendant Jayne, and the Treasurer and Director is Defendant Lira. Girardi

Financial does business in the State of Illinois and in this District. Plaintiff is including Girardi

Financial purely as a defendant to Count II, which seeks an accounting.

23.     Defendant Lira is a natural person and resident of the State of California. Lira is

formerly a partner at Defendant GK (as of May 2020) and a current partner at Defendant

Johnston Hutchinson & Lira LLP. Lira is also Defendant Girardi's son-in-law.

24.     Defendant Griffin is a natural person and a resident of the State of California.

Griffin is currently a partner at Defendant GK.

25.     Defendant Johnston Hutchinson & Lira LLP is a California limited liability

partnership with its principal place of business located at Two California Plaza, 350 South Grand

Avenue, Suite 2220, Los Angeles, California 90071. Johnston Hutchinson & Lira LLP does

business in the State of Illinois and in this District.

26.     Robert Finnerty ("Finnerty") is a natural person and resident of the State of

California. Finnerty is formerly a partner at Defendant GK (as of May 2020) and currently a

partner at Defendant Abir Cohen Treyzon Salo. Plaintiff is including Finnerty purely as a

defendant to Count II, which seeks an accounting.

27.     Defendant Abir Cohen Treyzon Salo, LLP, is a California limited liability

partnership with its principal place of business located at 16001 Ventura Boulevard, Suite 200,

Encino, California 91436. Abir Cohen Treyzon Salo does business in the State of Illinois and in

this District. Plaintiff is including Abir Cohen Treyzon Salo purely as a defendant to Count II,

which seeks an accounting.

28.     Defendant California Attorney Lending II, Inc. is a corporation existing under the laws of the State of New York with its principal place of business located at 6400 Main Street, Suite 120, Williamsville, New York 14221. California Attorney Lending II does business in the State of Illinois and in this District.

29.     Defendant Stillwell Madison, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 36600 North Pima Road, Suite 202B, Carefree, Arizona 85377. Stillwell Madison does business in the State of Illinois and in this District. Plaintiff is including Stillwell Madison purely as a defendant to Count II, which seeks an accounting.

30.     Defendants John Doe 1-10 ("John Doe 1-10" or "Doe Defendants") are yet to be identified entities and individuals who have improperly received and retained *Lion Air* client settlement funds. The Doe Defendants will be identified by and through discovery and the accounting process, and likely include lenders, co-counsel, referring counsel, and vendors, among others.

**JURISDICTION AND VENUE**

31.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the jurisdictional amount exceeds $75,000 and the Plaintiff does not share a state of citizenship with any Defendant.

32.     The Court has personal jurisdiction over Defendants because they conduct business in this District and because they have committed tortious acts purposefully directed at Illinois, and such conduct was designed to create an injury in Illinois and this District.

33.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants have committed tortious acts purposefully in this District and the underlying litigation giving rise to

this Action (*In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.)) is ongoing in this District before the Honorable Thomas M. Durkin.

## FACTUAL ALLEGATIONS

### The Crash of Lion Air Flight 610 and Subsequent Litigation

34.     On the morning of October 29, 2018, Lion Air Flight 610, flying on a Boeing 737 Max 8 model aircraft, departed Jakarta, Indonesia. Shortly after takeoff, the flight crew contacted air traffic control and requested to return to Jakarta, but the flight never made it.

35.     After a series of chaotic maneuvers resulting from a fundamental system failure, Flight 610 plummeted into the ocean. All 189 souls on board, who would have experienced unthinkable terror in their final moments, were killed on impact.

36.     Following this tragic accident, government investigations determined that the aircraft's anti-stall system—the maneuvering characteristics augmentation system—caused the aircraft's nose to suddenly, and without warning, drop and dive steeply.

37.     Following the revelations regarding Boeing's design defects and other failures, litigation ensued on behalf of those that had lost loved ones—in some cases entire families and minors who lost both parents. More than a dozen of those families directly or indirectly retained GK and expected that Girardi and other lawyers at his firm would represent their best interests and deliver the proceeds of any successful outcome to them.

38.     In the months that followed, litigation took place in this District, with the assistance of Plaintiff Edelson, before the Honorable Thomas M. Durkin, eventually leading to a series of mediations. In the end, Boeing reached individual settlements with each of the clients and families represented by GK and Edelson. The principle terms of the settlements were reached in early 2020 and finalized thereafter.

**The Failure of Defendants Girardi, GK, Griffin, and Lira to Transfer Proceeds of the Settlements to the Victims' Families**

39.     Throughout the pendency of the Lion Air litigation and the post-settlement process, GK attorneys maintained total and exclusive control over communications with the clients.

40.     In February 2020, Edelson attorney Ari Scharg was notified by GK attorney Griffin that he was beginning to receive executed settlement agreements from the clients. As was the plan, Edelson, in turn, began preparing motions seeking court approval for each settlement providing for an allocation of settlement proceeds to minor heirs of the decedents, the first of which, was filed on February 21, 2020. (Dkt. 379.)[4] That motion was granted by the Court on February 24, 2020 and the case was dismissed. (Dkt. 384.)

41.     Soon after the order dismissing the case was entered on February 24, 2020, Mr. Scharg inquired with Defendant Griffin as to when he expected Boeing to fund the settlements. Griffin stated that Boeing was waiting to receive all of the executed settlement agreements from each of GK's and Edelson's collective clients. Griffin further stated that he was still waiting on several releases to be executed and returned but expected to receive them shortly.

42.     The following week, Edelson secured approval of three more settlement agreements involving allocations to minors that were returned executed, and those cases were also dismissed. (Dkts. 419, 424, 427.) Meanwhile, Defendant Griffin and his then partner at GK, Defendant Lira, continued to represent that they expected the remaining settlement agreements to be executed by the clients shortly, at which time Boeing would fund the settlements. As it turned out, though, it would take several more months for the remaining settlement agreements to be executed by the clients.

---

[4]     All "Dkt." cites are to *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

43.     Beginning in April 2020, Edelson attorneys began reaching out to Defendants Griffin and Lira, almost on a weekly basis, to get an update on the status of getting the settlement agreements executed and the settlements funded—the thought being that the clients who had executed the settlement agreements shouldn't have to continue to wait for the others to do the same. Defendants Griffin and Lira would respond periodically with little more than a statement that they were still waiting on executed settlement agreements from the clients, and that nothing could be done to move Boeing off its position that it needed all of the clients to sign and return the settlement agreements before it would release the settlement proceeds.

44.     On May 11, 2020, Jay Edelson sent Defendant Lira an email expressing concern about the delay in finalizing the settlements (particularly in light of Boeing's public pronouncements at the time that it was considering whether to file for bankruptcy) and the need to get them funded for the sake of the clients. Defendant Lira responded by email, providing a more detailed explanation of where things stood on specific releases, why it was taking so long for them to be translated and executed by the clients, and repeating that Boeing would release the settlement funds when they received the signed releases. He assured Edelson that the funds were paid by insurance and secure in an escrow account, so there was no risk posed by a potential bankruptcy. Lira's explanation was not completely satisfying, but Lira and the other lawyers at GK were the only ones in contact with the clients and Lira's explanation of why it was taking longer for certain of them to execute and return the settlement agreements seemed plausible.

45.     But several more weeks passed without any further updates regarding the status of the outstanding settlement agreements. Then, on June 11, 2020, Defendant Lira sent an email to Edelson asking to set up a call to discuss the status of the cases. On that call, which occurred on June 16, 2020, Defendant Lira informed Edelson that he had recently resigned from GK and

explained that the settlements had finally been funded and that the bulk of the funds were

received and held by GK. Though Defendant Lira was intent on discussing which firm he

believed should be held responsible for paying Edelson's share of attorneys' fees (GK or his new

firm), the attorneys at Edelson were instead focused on the more fundamental question that they

had been asking for several months: Have the clients received their proceeds from the

settlements?

46.     Defendant Lira, now a partner at Defendant Johnston Hutchinson & Lira, failed to

provide a coherent answer to this question, and instead, on July 6, 2020, sent a letter to Edelson

that, without detail, claimed that certain Lion Air clients had received their settlement proceeds

by Boeing, certain clients had not, and that a check to Edelson for some portion of the attorneys'

fees owed to them was included with the letter as "partial payment." Edelson did not then, and

has not since, cashed that check.

47.     A few days later, Edelson responded with a letter to Defendants Girardi and Lira,

which stated, among other things, that "in response to David's cover letter that encloses a check

to our firm for some portion of the fees owed on three of the Lion Air cases, we decline to accept

any monies until we are given adequate assurances that each and every one of our collective

clients who are entitled to settlement monies have, in fact, received the entirety of the monies

owed." The letter also requested, again, information about the status of the settlement proceeds

owed to the clients.

48.     Several days later, Defendant Lira responded, but again did not say with any

clarity which of the clients had received full settlement payments and whether any were still

owed money. Lira also took the position that because he left GK, he no longer had any ongoing

involvement in the cases and any further questions regarding the status of the settlement

proceeds owed to the clients and the fees owed to Edelson should be directed to Defendants

Girardi and Griffin, since GK was the law firm that had been engaged by and had the

relationship with the clients.

49.     Edelson attorneys continued to press Defendants Girardi and Griffin as to the

status of the settlement proceeds and whether any clients were yet to be paid. Starting in July

2020, Edelson's managing partner, Rafey Balabanian, took the lead in communicating with

Girardi and Griffin. In a series of phone calls that took place over the course of the latter half of

July 2020, Defendant Griffin indicated that despite Boeing fully funding the settlements, he

understood from Defendant Girardi that the clients had not received the full amount owed to

them and were still owed about half of what was due to them. Griffin could not elaborate on why

such an amount was still owed to certain clients or the status of the remaining settlement

proceeds because Girardi is the sole equity owner of GK with sole and exclusive control over the

firm's bank accounts, including its client trust accounts. As a result, Griffin said those questions

could only be answered by Girardi. Griffin also claimed that part of the difficulty in speaking

with and delay in getting answers from Girardi was attributable to Girardi being unavailable in

recent weeks due to a serious illness that caused him to be hospitalized and for which he sought

treatment.

50.     Balabanian ultimately got an opportunity to speak with Defendant Girardi in late

July. Girardi's explanation regarding the status of the settlement proceeds was extremely

convoluted and meandering, and he couched everything in terms of him recovering from the

illness that he was being treated for, so Balabanian would have to bear with his inability to give a

long and detailed explanation of why payment of the settlement proceeds to the clients (and of

lesser importance, payment of Edelson's portion of fees) had been delayed. Girardi claimed that

14

his illness, which caused him to be away from his firm for several weeks, is what ultimately

caused the—in his words—"mistake" of not getting certain clients paid in full, and that he

planned to immediately remedy the issue by getting the remaining amount that was owed wired

out[5] within a few days. Girardi said that he or Griffin would follow up once that occurred.

51.     Despite his assurances, Girardi did not follow back up with Balabanian. Instead,

Balabanian made several more attempts over the course of the following weeks to reach Girardi

to confirm that payment had been made to the clients. They finally spoke again in late August

2020, at which point the conversation quickly became contentious after Girardi stated that he

didn't need to explain himself to Balabanian when it came to clients of GK and that, as he

promised a few weeks ago, arrangements had been made for them to receive the remaining

monies owed to them, as well as the attorneys' fees owed to Edelson. Girardi then advised that

Griffin would follow up and quickly ended the call.

52.     In what started to feel like a recurring theme, though, Balabanian was the one who

would need to follow up to confirm Girardi had made good on his promises. Eventually, though,

on or about September 3, 2020, Griffin advised Balabanian that a wire for half of the outstanding

amount owed to the clients had been initiated, with the other half set to be initiated the following

Monday. While Griffin said he could send proof of the wired funds, he ultimately never did.

53.     With the payments to the clients seemingly out of the way, the conversation

shifted to the fees owed to Edelson on account of the settlements. As Edelson had made clear

---

[5]     Consistent with what Defendants Griffin and Lira were initially saying, Girardi also
attributed the delay in paying out the settlement proceeds to the clients to Boeing's refusal to
fund the settlement without all of the executed settlement agreements in hand. Girardi also
mentioned something about working on and even retaining lawyers for the benefit of the clients
to assist with some sort of tax issue affecting the tax treatment of proceeds recovered on account
of wrongful death claims and that getting a determination from the IRS was also holding up
finalizing and getting the settlements funded. In all honesty, the conversation with Girardi was
strained and he didn't make a whole lot of sense when it came to this point.

from the outset, the timing of payment of their fees wasn't of particular concern and that since

the clients had been paid, payment of the fees could be made at any time before the end of the

year. To that end, Balabanian requested, and Griffin agreed to provide, a final statement showing

the settlement proceeds disbursed, and the amount of fees owed to Edelson, and when they

would likely be paid.

54.     Then, in November 2020, Plaintiff Edelson received another letter from

Defendant Lira regarding the settlement proceeds paid to certain other Lion Air clients and how

said proceeds were being distributed. Among other things, the letter stated that GK's 50%

interest (which included Edelson portion) in the gross attorneys' fees generated from the

settlements of certain of the clients' cases had been directly transferred to Defendant California

Attorney Lending at the direction of Girardi. Lira also included a check to Edelson as another

partial payment of the attorneys' fees owed to them. Edelson did not then, and has not since,

cashed this check. This letter makes clear Lira had knowledge of and cooperated with Girardi's

misappropriation and conversion of settlement proceeds, since at least a portion of said proceeds

were being transferred to (and accepted by) lenders of Girardi instead of Edelson who are

rightfully entitled to them.

55.     Though Edelson was under the impression that the settlement proceeds owed to

the clients had finally been paid, Lira's letter once again raised concerns, particularly with regard

to the part referencing Girardi directing the attorneys' fee portion of the settlement proceeds that,

in part, belonged to Edelson, to a litigation funder. As a result, Balabanian reached back out to

Griffin to inquire about whether he could provide any more insight into when Edelson could

expect payment of its fees.

56.     Defendant Griffin responded that there had been some "positive developments," but that Girardi was undergoing another medical procedure, so Griffin needed a couple more days to speak with him and report back. After several more days passed, Balabanian again followed up with Griffin and inquired about what Griffin characterized as "positive developments." Griffin advised that the positive developments were that certain of the Lion Air clients had demanded a call with Girardi to gain an understanding of when they would be paid the balance of the settlement proceeds owed to them. Balabanian responded that his understanding from Girardi and Griffin was that the clients had been paid, and that the only outstanding obligation on the Lion Air Litigation was Edelson's attorneys' fees. But Griffin advised that that understanding was mistaken, and that Girardi hadn't actually paid the clients as previously represented. Griffin further stated that he was skeptical that Girardi or GK had the financial means to satisfy GK's obligations to those certain Lion Air clients that are still owed settlement proceeds and Edelson.

57.     In the week following this letter, and after attempts by Edelson to elicit additional information from Defendant Griffin, Girardi called Balabanian numerous times (including over Thanksgiving weekend) to plead his case and presumably ward off this Complaint. Two voicemails from Girardi can be found here[6] and here.[7]

58.     The first voicemail states, in part:

We're doing good on this thing, getting things squared away and shit. Don't be mean to me, be nice to me. I'm doing good. It was because of me that we got this by the way. … I'll be in touch, don't worry about everything, we're friends, things are going to work out good.

The second voicemail states, in part:

We screwed up here a little bit. … We had three different air crashes and they got a little

---

[6]     https://edelson.com/wp-content/uploads/voicemail-2101.mp3
[7]     https://edelson.com/wp-content/uploads/voicemail-2099.mp3

screwed up. I'll get everything worked out by Thursday. I'm so sorry, this never happened before, anyway, everything will be smoothed over on Thursday.

59.     Just before the filing of this Complaint, Jay Edelson and Rafey Balabanian reached out to and spoke with Defendant Griffin. During that call, Defendant Griffin informed them that they should get in touch with Defendant Robert Finnerty, who would be serving as a receiver charged with overseeing the wind up of Defendant GK.

60.     Shortly thereafter, Edelson and Balabanian reached out to Defendant Finnerty. Defendant Finnerty explained that he and his (apparently new) firm, Defendant Abir Cohen Treyzon Salo, represent a creditor of Girardi and GK and that they, along with Girardi's lenders and certain other creditors, have more or less agreed that he and his firm would act as receiver, which meant his firm would essentially be taking over GK for the purpose of liquidating its assets, including litigating to settlement or judgment, as necessary, any ongoing cases, and winding up its affairs, including payment of debts owed to creditors, which would presumably include the Lion Air clients and Plaintiff Edelson.

61.     Following the call, Plaintiff Edelson came learn that Defendant Finnerty had been a decades-long partner at GK, who only recently left GK in May 2020, and who has on numerous occasions represented Girardi and the firm against actions by clients claiming their money had been mishandled. At no time during this call, or the call with Defendant Griffin, was any of this disclosed to Edelson or Balabanian.

62.     Despite the initial representations of Defendant Griffin (and later ones by Defendants Lira and Girardi), on information and belief, upon the dismissal of each case, Boeing transferred the settlement proceeds to GK in accordance with the terms of the settlement agreements, for the purpose of GK distributing said proceeds to GK's Lion Air clients.

63.     On further information and belief, Girardi, who exercises *exclusive and total control* of all bank accounts for GK, embezzled the settlement proceeds transferred by Boeing for his own personal use, with the knowledge and cooperation of Defendants Lira and Griffin.

**The Opulent, and Expensive, Life of Girardi and Jayne**

64.     By all accounts, Girardi keeps engaging in fraud and deception in order to support a never-ending spending spree by himself and Jayne.

65.     Girardi and Jayne lead notoriously lavish lifestyles.

66.     Erika reportedly spends *$40,000 per month* on her "look."[8] Erika even performs a song called "Exxpen$ive," featuring the hook "it's expensive to be me."[9]

67.     Tom, for his part, has a daily standing reservation and exclusive table at Morton's Steak House in Los Angeles, routinely flies on private jets, and owns multiple homes across the country. In other words, he too maintains a significant monthly tab.

68.     When asked why she and Tom required two private planes, Erika responded "Because one is small and one is big!"[10] Erika also bragged that the most expensive thing she owns is a singular piece of jewelry but would not say how much it was worth (which would

---

[8]     Lindsey Cronin, *RHOBH Star Erika Jayne Reveals She Spends $40,000 A Month On Her Appearance! Says Being Rich AF Gets 'Boring'*, REALITY BLURB, https://realityblurb.com/2018/03/21/rhobh-erika-jayne-spends-40000-a-month-on-her-appearance-says-being-rich-af-gets-boring/.

[9]     *Erika Jayne - XXpen$ive – Expensive*, YOUTUBE, https://www.youtube.com/watch?v=D26WFPl2ROQ.

[10]    Marenah Dobin, *The Craziest Thing Erika Girardi Owns*, BUSTLE, https://www.bustle.com/articles/149204-the-craziest-thing-erika-girardi-owns-truly-sets-the-real-housewives-of-beverly-hills-star-apart.

presumably mean it's more expensive than her $250,000 Lamborghini).[11] And she bought Tom a

$5,000 toilet as a gift.[12]

69.     Funding this lifestyle requires large sums of cash.

70.     On information and belief, Girardi and Jayne siphoned significant sums of money

from lenders and clients and moved it out of GK's bank accounts for personal use. This exact

scheme was described in a sworn declaration by Alan Zimmerman, CEO of Law Finance, in its

litigation against Girardi:

> [Girardi's] claim [that Law Finance Group] included an unwarranted attack in
> their complaint by claiming that Mr. Girardi was using LFG's money to support
> his lavish lifestyle, but even if that were somehow relevant here, LFG's
> allegations are true. As explained above, LFG has obtained financial records that
> demonstrate that Girardi has been using Girardi Keese funds to "loan" over $20
> million dollars to his wife's company, EJ Global. LFG even tried previously to
> redact the name of the recipient of these funds from the prior filings, in order to
> save Mr. Girardi the embarrassment.[13]

71.     Now that Tom and Erika are facing increasing pressure to actually pay down their

debts, as well as Tom living up to his fiduciary duty by transferring settlement funds to clients

who are otherwise prepared to sue him, they are searching for new methods to protect their

money.

72.     On information and belief, Tom's and Erika's divorce is a sham proceeding,

designed to further the scheme described by Mr. Zimmerman above: place assets outside of

Tom's and his law firm's name to shield it from the collection efforts of his creditors.

---

[11]     Jocelyn Vena, *What Is the Most Expensive Thing Erika Girardi Owns?* THE DAILY DISH,
https://www.bravotv.com/the-daily-dish/the-most-expensive-thing-erika-girardi-owns.
[12]     Marenah Dobin, *Erika Girardi Gave Her Husband Tom Girardi A $5,000 Toilet As A
Gift*, REALITY TEA, https://www.realitytea.com/2017/12/29/erika-girardi-gave-husband-tom-
girardi-5000-toilet-gift/.
[13]     *Law Finance Group, LLC v. Girardi Keese, et al.*, No. 19STCV01455 (Cal. Sup. Ct.)
(#BI-63).

**Girardi and GK Have Consistently Defrauded and Failed to Pay Clients, Lenders, and Others, For Their Own Benefit**

73.     A 2017 article noted that "Girardi Keese has been sued for malpractice, fraud or breach of contract at least 22 times since 1995…"[14] And numerous lawsuits have been filed since.

74.     Based only upon publicly available information, these prior lawsuits were brought by clients, consultants, vendors, and lenders, among others, and amount to tens of millions of dollars improperly withheld and embezzled by Girardi and his firm.

75.     Most recently, GK has been sued by multiple financial firms that loaned the firm over twenty million dollars collectively.

76.     Law Finance Group sued GK and Girardi personally in January 2019 after they defaulted on a $16 million note.[15] Defendant Stillwell Madison likewise filed suit a month later to recover on a $5 million defaulted loan.[16]

77.     As alleged in those complaints, Girardi failed to make payments and quickly defaulted on these loans; however, he managed to negotiate forbearance agreements with both lenders within weeks of each other (without either lender having knowledge of the other), that obligated his firm to make millions of dollars in payments just in the following few months. As it turns out, the forbearance agreements were simply stalling tactics, as Girardi and his firm then failed to make any of those payments as well.

78.     Eventually, under court order in 2019, GK paid Law Finance Group $16 million dollars to clear the loan. The source of this money is unknown. By contrast, Stillwell Madison

---

[14]     Sandy Mazza, *Famed attorney Thomas Girardi accused of hoarding settlement funds for Carson's Carousel residents*, DAILY BREEZE, https://www.dailybreeze.com/2017/07/01/famed-attorney-thomas-girardi-accused-of-hoarding-settlement-funds-for-carsons-carousel-residents/.
[15]     *Law Finance Group, LLC, v. Girardi Keese*, No. 19STCV01455 (Cal. Sup. Ct.).
[16]     *Stillwell Madison, LLC, v. Girardi Keese*, No. 20STCV07853 (Cal. Sup. Ct.).

sought and received a writ of attachment for nearly $6 million in October 2020, and on information and belief, is proceeding with collection efforts.

79.     On information and belief, to stave off collection efforts, Girardi and his lenders and other creditors have entered into a series of inter-creditor agreements, which provide that any monies received into Defendant GK's bank accounts be directed to those lenders and creditors. But because of Girardi's now widely-known financial troubles, these lenders and other creditors knew or should have known that monies being redirected by Defendant Girardi are likely embezzled client funds and co-counsel fees and thus, were illegally obtained by Defendant Girardi in the first instance. As a result, by knowingly accepting these embezzled funds, the lenders, including Defendants California Attorney Lending, and Defendant Girardi's other creditors are furthering his illegality.

80.     Indeed, on information and belief, Girardi and GK have directed Lion Air client funds, and money otherwise owed to third parties like Edelson, to lenders including Defendant California Attorney Lending in order to stave off these creditors.

81.     For its part, on information and belief, Defendant California Attorney Lending, through its due diligence process, would be aware (1) if client settlement funds had been received in the Lion Air cases and if and when they were paid out to the client; (2) of the amount of fees held back from those funds under the client contract; (3) of any obligations imposed on those fees by a third party, such as Edelson; and (4) that Edelson had appearances on file in the Lion Air cases and was a primary participant in the litigation. By entering into an agreement with GK that requires 50% of gross attorneys' fees to be directed to itself, California Attorney Lending cannot avoid the knowledge that it is accepting embezzled funds that are contractually

owed to the victims' families and of lesser importance, to Edelson. This is both unethical and an unlawful interference with enforceable contracts.

82.    On information and belief, Defendants Girardi, Jayne, EJ Global, GK, Lira, Griffin, and Johnston Hutchinson & Lira LLP, California Attorney Lending, and other Doe Defendants yet to be identified, have wrongfully transferred, misappropriated, and retained settlement funds owed to the victims of Lion Air Flight 610, as well as attorneys' fees owed to Edelson and other third parties.

## COUNT I
### UNJUST ENRICHMENT – CONSTRUCTIVE TRUST
### (As Against Defendants Girardi, GK, Jayne, EJ Global,
### Lira, Griffin, Johnston Hutchinson & Lira, California Attorney Lending II)

83.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

84.    Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, and where such retention violates fundamental principles of equity, justice, and good conscience.

85.    On information and belief, Defendants Girardi, GK, Jayne, EJ Global, Lira, Griffin, Johnston Hutchinson & Lira, and California Attorney Lending II are each holding funds that properly belong to the victims of Lion Air Flight 610 and to Plaintiff Edelson.

86.    A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

87.    Plaintiff Edelson has contractually created property rights to specific percentages of the attorneys' fees generated by those settlement funds.

88.     However, on information and belief, the funds owed to Plaintiff Edelson are now
commingled with the funds owed to the Lion Air clients and have been distributed among the
Defendants and other unknown entities. Nevertheless, the funds are identifiable, and there is a
direct chain from the Boeing payments to the current persons in possession of the money.

89.     On information and belief, Defendants Jayne and EJ Global have received and
retained a portion of the funds transferred by Boeing to GK. Specifically, a portion of those
funds have, on information and belief, been unlawfully transferred to Defendants Jayne and EJ
Global for their personal use as well as to shield the money, for the benefit of Defendant Girardi,
from their creditors, including Plaintiff.

90.     On information and belief, funds transferred by Boeing to GK that properly
belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients
and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant
California Attorney Lending.

91.     On information and belief, funds transferred by Boeing to GK that properly
belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients
and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant
Johnston Hutchinson & Lira.

92.     Defendants Girardi, Griffin, and Lira represent or represented the Lion Air clients
and owe them a fiduciary duty as counsel. On information and belief, Defendants Girardi,
Griffin, and Lira breached their fiduciary duties to the Lion Air clients by causing, permitting,
facilitating, or otherwise allowing the Lion Air clients' money to be commingled with funds
belonging to Plaintiff Edelson and distributed to the other Defendants and/or retained for their
own personal benefit.

93.     Under principles of equity and good conscience, Defendants should not be permitted to retain any of the funds transferred from Boeing to GK.

94.     However, principles of equity and good conscience, as well as the Rules of Professional Conduct, prevent Plaintiff Edelson from taking possession of any of these commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing.

95.     Plaintiff seeks the imposition of a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff, if sufficient funds remain in trust. In the alternative, Plaintiff requests that all such sums should be disgorged.

### COUNT II
### ACCOUNTING
**(As Against Defendants Girardi, GK, Jayne, EJ Global, Girardi Financial, Lira, Griffin, Johnston Hutchinson & Lira, Finnerty, Abir Cohen Treyzon Salo, California Attorney Lending II, Stillwell Madison, and John Doe 1-10)**

96.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

97.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of the Lion Air clients represented by GK, minus agreed upon attorneys' fees.

98.     Presently, the whereabouts, distribution, allocation, or transfer of those funds is not known to Plaintiff.

99.     Any information on the current status and location of that money is within the exclusive knowledge of Defendants. As such, Plaintiff has an inadequate legal remedy in that it cannot determine what party is responsible, in what amount, for its damages.

100.    Plaintiff therefore seeks an order requiring all Defendants to provide a full and complete accounting of all transactions or records relating to the Lion Air settlement money.

## COUNT III
## BREACH OF CONTRACT
### (As Against Defendants GK, Girardi, Griffin, and Lira)
### (*In the Alternative to Counts I and II*)

101.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

102.    Plaintiff entered into two enforceable contracts with GK. The first contract, presented and executed by Defendant Griffin, provided that Edelson would receive 50% of total attorneys' fees recovered for a specific set of Lion Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was expected to act as local counsel, as well as participate directly in the litigation and settlement process.

103.    The second contract, presented and executed by Defendant Lira, provided that Edelson would receive 20% of total attorneys' fees recovered for a separate set of specific Lion Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was expected to act as local counsel, as well as participate directly in the litigation and settlement process.

104.    These contract terms were negotiated and agreed to both verbally and in writing.

105.    Edelson fully performed its obligations under the contracts by acting as local counsel and assisting in the litigation and settlement of the Lion Air cases.

106.    Defendants GK, Girardi, Griffin, and Lira breached their contractual obligations by not paying Edelson its share of attorneys' fees.

107.     As a direct, foreseeable, and proximate result of Defendants' breaches, Plaintiff

has been damaged in amount to be proven at trial.

### COUNT IV
### TORTIOUS INTERFERENCE WITH CONTRACT
### (As Against Defendant California Attorney Lending)
### (*In the Alternative to Counts I and II*)

108.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein,

excluding paragraphs 83-100.

109.     Certain victims of Lion Air Flight 610 entered into enforceable contracts for

representation of their interests by GK as it related to the crash. Plaintiff Edelson also entered

into enforceable contracts with GK governing the allocation of attorneys' fees resulting from

resolution of the claims of specific clients in the matter of *In Re: Lion Air Flight JT 610 Crash*,

No. 18-cv-07686 (N.D. Ill.).

110.     On information and belief, Defendant California Attorney Lending had

knowledge of those contracts and the obligations they placed on GK to pay certain victims of the

Lion Air Flight 610 plane crash the proceeds of any settlement reached with Boeing, as well as

pay Edelson a portion of any attorneys' fees recovered on account of such settlements.

111.     Defendant California Attorney Lending intentionally and without justification

induced the breach of those contracts by demanding, accepting, and retaining monies that

Defendant Girardi and GK embezzled, which rightfully belonged to the clients of GK who lost

loved ones in the Lion Air Flight 610 crash, as well as Plaintiff Edelson.

112.     Based upon Defendant California Attorney Lending's wrongful conduct, by

failing to pay their Lion Air clients, as well as the attorneys' fees owed to Plaintiff Edelson, and

instead directing that such funds be transferred to Defendant California Attorney Lending,

27

Defendants GK, Girardi, Griffin, and Lira did subsequently breach their engagement agreements with their Lion Air clients, as well as their fee allocation agreement with Edelson.

113.    As a direct, foreseeable, and proximate result of Defendant California Attorney Lending's tortious interference with Plaintiff's contracts, Plaintiff has been damaged in amount to be proven at trial.

**COUNT V**
**CONVERSION**
**(As Against Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira)**
***(In the Alternative to Counts I and II)***

114.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

115.    A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

116.    Plaintiff Edelson has contractually created property right to specific percentages of the attorneys' fees generated by those settlement funds.

117.    Under those contracts, Plaintiff Edelson has an absolute and unconditional right to the immediate possession of the attorneys' fees, once the appropriate settlement funds have been transferred to the Lion Air clients.

118.    Plaintiff has made numerous demands on Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira for an accounting and payment of attorneys' fees, to no avail.

119.    Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira have wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to Plaintiff.

120.    As a direct, foreseeable, and proximate result of the conversion of Plaintiff's share of attorneys' fees by Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira, Plaintiff has been damaged in amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Edelson PC respectfully requests that this Court enter judgment in its favor and enter an order:

A.  Creating a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff Edelson if sufficient funds remain in trust. In the alternative, an order requiring the disgorgement of all Lion Air client funds from any Defendant (or any non-party) who is improperly in receipt of those funds;

B.  Requiring all Defendants to provide a full and complete accounting of all funds transferred from Boeing that were intended for any GK client (inclusive of any transfers to third parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re: Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds;

C.  Finding that Defendants GK's, Girardi's, Griffin's, and Lira's conduct constitutes a breach of contract;

D.  Finding that Defendant California Attorney Lending's conduct constitutes tortious interference with contract;

E.  Finding that Defendants GK's, Girardi's, Griffin's, Lira's, and Johnston Hutchinson & Lira's conduct constitutes conversion;

F.   Requiring the transfer of all Lion Air client funds to the appropriate client recipients;

G. Requiring the payment of all contractually required attorneys' fees to Edelson PC, only

    after the Court confirms the full and complete payment to the Lion Air clients;

H. Awarding Plaintiff its costs and expenses in this litigation, including reasonable

    attorneys' fees; and

I. Awarding such other and further relief as the Court deems equitable and just.

## REQUEST FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.


                                            Respectfully submitted,

                                            **EDELSON PC**

Dated: December 2, 2020                      /s/Jay Edelson
                                            One of Plaintiff's Attorneys

                                            Jay Edelson
                                            jedelson@edelson.com
                                            Benjamin H. Richman
                                            brichman@edelson.com
                                            Alexander Tievsky
                                            atievsky@edelson.com
                                            EDELSON PC
                                            350 North LaSalle, 14th Floor
                                            Chicago, Illinois 60654
                                            Tel: 312.589.6370
                                            Fax: 312.589.6378

                                            Rafey S. Balabanian
                                            rbalabanian@edelson.com
                                            EDELSON PC
                                            123 Townsend Street, Suite 100
                                            San Francisco, California 94107
                                            Tel: 415.212.9300
                                            Fax: 415.373.9435

# EXHIBIT 3

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Central District of California

Case number (if known): _____    Chapter 7

☐ Check if this is an amended filing

Official Form 105

# Involuntary Petition Against an Individual                    12/15

Use this form to begin a bankruptcy case against an individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against a non-individual, use the *Involuntary Petition Against a Non-Individual* (Official Form 205). Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write name and case number (if known).

## Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| 1. Chapter of the Bankruptcy Code | *Check one:*<br>☑ Chapter 7<br>☐ Chapter 11 |
|---|---|

## Part 2:   Identify the Debtor

| 2. Debtor's full name | Thomas<br>First name<br><br>Vincent<br>Middle name<br><br>Girardi<br>Last name<br><br>_____<br>Suffix (Sr., Jr., II, III) |
|---|---|
| 3. Other names you know the debtor has used in the last 8 years<br><br>Include any assumed, married, maiden, or trade names, or *doing business as* names. | Tom Girardi<br>Tom Girardi, dba Girardi Keese<br>Thomas Girardi, dba Girardi Keese |
| 4. Only the last 4 digits of debtor's Social Security Number or federal Individual Taxpayer Identification Number (ITIN) | ☑ Unknown<br><br>XXX – XX – ___ ___ ___ ___    OR    9 xx – xx – ___ ___ ___ ___ |
| 5. Any Employer Identification Numbers (EINs) used in the last 8 years | ☑ Unknown<br><br>EIN ___ – ___ ___ ___ ___ ___ ___ ___<br><br>EIN ___ – ___ ___ ___ ___ ___ ___ ___ |

Debtor    **Thomas Vincent Girardi**                                Case number (if known) _____

| | | |
|---|---|---|
| 6. **Debtor's address** | **Principal residence** | **Mailing address, if different from residence** |

Number    Street                                         Number    Street

City                    State    ZIP Code            City                    State    ZIP Code

County

Principal place of business.

**1126 Wilshire Boulevard**
Number    Street

**Los Angeles**                **CA**    **90017**
City                           State    ZIP Code

**Los Angeles**
County

7. **Type of business**
   - ☐ Debtor does not operate a business

   *Check one if the debtor operates a business:*
   - ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
   - ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
   - ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
   - ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
   - ☑ None of the above

8. **Type of debt**    **Each petitioner believes:**
   - ☐ Debts are primarily consumer debts. *Consumer debts are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."*
   - ☑ Debts are primarily business debts. *Business debts are debts that were incurred to obtain money for a business or investment or through the operation of the business or investment.*

9. **Do you know of any bankruptcy cases pending by or against any partner, spouse, or affiliate of this debtor?**
   - ☑ No
   - ☐ Yes. Debtor _____    Relationship _____
     District _____ Date filed _____    Case number, if known _____
     MM / DD / YYYY

     Debtor _____    Relationship _____
     District _____ Date filed _____    Case number, if known _____
     MM / DD / YYYY

Official Form 105          Involuntary Petition Against an Individual          page 2

Debtor   **Thomas Vincent Girardi**                                    Case number (if known) _____

| Part 3: | Report About the Case |
|---|---|

**10. Venue**
Reason for filing in this court.

Check one:

☑ Over the last 180 days before the filing of this bankruptcy, the debtor has resided, had the principal place of business, or had principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

☐ Other reason. Explain. (See 28 U.S.C. § 1408.) _____

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

At least one box must be checked:

☑ The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☑ No
☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jill O'Callahan as successor in Interest to James O'Callahan | Breach of Contract | $ 757,500.00 |
| Robert Keese | Breach of Contract | $ 1,657,500.00 |
| John Abassian | Breach of Contract | $ 1,637,620.00 |
| | Total | $ 6,510,518.76 |

If more than 3 petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's (or representative's) signature under the statement, along with the signature of the petitioner's attorney, and the information on the petitioning creditor, the petitioner's claim, the petitioner's representative, and the attorney following the format on this form. --SEE ATTACHMENT - Four (4) Pages

Debtor   **Thomas Vincent Girardi**                                    Case number (if known)

| Part 2: | Request for Relief |
|---|---|

Petitioners request that an order for relief be entered against the debtor under the chapter specified in Part 1 of this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioners declare under penalty of perjury that the information provided in this petition is true and correct. Petitioners understand that if they make a false statement, they could be fined up to $250,000 or imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571. If relief is not ordered, the court may award attorneys' fees, costs, damages, and punitive damages. 11 U.S.C. § 303(i).

. Petitioners or Petitioners' Representative                          Attorneys

Signature of petitioner or representative, including representative's title          Signature of attorney

Jill O'Callahan                                                      ANDREW GOODMAN, ESQ.
Printed name of petitioner                                          Printed name

Date signed   .12/17/2020.                                          GOODMAN LAW OFFICES, APC
              MM / DD / YYYY                                        Firm name, if any

Mailing address of petitioner                                      30700 Russell Ranch Rd., Ste 250
1437 Club View Drive                                                Number   Street

Number   Street                                                     Westlake Village       CA      91382
Los Angeles          CA.           90024                            City                   State    ZIP Code
City                 State         ZIP Code
                                                                   Date signed   12/17/2020
                                                                                 MM / DD / YYYY
If petitioner is an individual and is not represented by an
attorney:                                                          Contact phone   818-802-5044   Email andrewgoodman@comcast.com
Contact phone   310-429-5098
Email   jjillocallahan@gmail.com

Name and mailing address of petitioner's representative, if any

Name

Number   Street

City                 State         ZIP Code

Debtor  Thomas Vincent Girardi                                          Case number (if known)

X _RMX_____                                      X _(signature)_____

Signature of petitioner or representative, including representative's title      Signature of Attorney

Robert Keese                                     Andrew Goodman, Esq.
Printed name of petitioner                       Printed name

Date signed   12/16/2020                         GOODMAN LAW OFFICES, APC
              MM / DD / YYYY                      Firm name, if any

                                                 30700 Russell Ranch Rd., Suite 250
                                                 Number    Street

Mailing address of petitioner                    Westlake Village,  CA.        91362
                                                 City                   State      ZIP Code
22982 Rosemont Court
Number  Street                                   Date signed   12/17/2020
                                                               MM / DD / YYYY
Murrieta,              CA.        92562
City                   State      ZIP Code       Contact phone  818-802-5044   Email agoodman@andyglaw.com


Name and mailing address of petitioner's representative, if any


Name


Number    Street


City        State ZIP Code


X                                                X

Signature of petitioner or representative, including representative's title      Signature of Attorney

John Abassian                                    Andrew Goodman, Esq.
Printed name of petitioner                       Printed name

Date signed   12/16/2020                         GOODMAN LAW OFFICES, APC
              MM / DD / YYYY                      Firm name, if any

                                                 30700 Russell Ranch Rd., Suite 250
                                                 Number    Street

Mailing address of petitioner                    Westlake Village, CA.         91362
                                                 City                   State      ZIP Code
6403 Van Nuys Boulevard
Number  Street                                   Date signed   12/17/2020
                                                               MM / DD / YYYY
VAN NUYS               CA.        91401
City                   State      ZIP Code       Contact phone  818-802-5044   Email agoodman@andyglaw.com


Name and mailing address of petitioner's representative, if any


Name


Number    Street


City        State    ZIP Code


Official Form 105                  Involuntary Petition Against an Individual                    page 5

Debtor   __Thomas Vincent Girardi__                         Case number (if known) _____

---

**✖** _____
Signature of petitioner or representative, including representative's title

Robert Keese
Printed name of petitioner

Date signed   __12/16/2020__
              MM / DD / YYYY

Mailing address of petitioner
22982 Rosemont Court
Number   Street

Murrieta,              CA.              92562
City                   State            ZIP Code

Name and mailing address of petitioner's representative, if any

Name _____

Number   Street _____

City        State   ZIP Code

**✖** _____
Signature of Attorney

Andrew Goodman, Esq.
Printed name

GOODMAN LAW OFFICES, APC
Firm name, if any

30700 Russell Ranch Rd., Suite 250
Number   Street

Westlake Village,         CA.              91362
City                      State            ZIP Code

Date signed   __12/17/2020__
              MM / DD / YYYY

Contact phone   818-804-5022   Email agoodman@andyglaw.com

---

**✖** _____
Signature of petitioner or representative, including representative's title

John Abassian
Printed name of petitioner

Date signed   __12/17/2020__
              MM / DD / YYYY

Mailing address of petitioner
6403 Van Nuys Boulevard
Number   Street

VAN NUYS       CA.              91401
City           State            ZIP Code

Name and mailing address of petitioner's representative, if any

Name _____

Number   Street _____

City        State   ZIP Code

**✖** _____
Signature of Attorney

Andrew Goodman, Esq.
Printed name

GOODMAN LAW OFFICES, APC
Firm name, if any

30700 Russell Ranch Rd., Suite 250
Number   Street

Westlake Village,         CA.              91362
City                      State            ZIP Code

Date signed   __12/17/2020__
              MM / DD / YYYY

Contact phone   818-802-5044   Email agoodman@andyglaw.com

---

Official Form 105            Involuntary Petition Against an Individual            page 5

# EXHIBIT 4

Fill in this information to identify the case:

United States Bankruptcy Court for the:

__Central__ District of __California__
                    [State]

Case number (if known) _____    Chapter __7__

☐ Check if this is an
   amended filing

## Official Form 205

# Involuntary Petition Against a Non-Individual                    12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin
a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If
more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if
known).

### Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| 1. | Chapter of the Bankruptcy Code | Check one: |
|---|---|---|
| | | ☑ Chapter 7 |
| | | ☐ Chapter 11 |

### Part 2:   Identify the Debtor

| 2. | Debtor's name | **GIRARDI KEESE** |
|---|---|---|

| 3. | Other names you know the debtor has used in the last 8 years

Include any assumed names, trade names, or *doing business* as names. | **Thomas Girardi, dba Girardi Keese** |
|---|---|---|

| 4. | Debtor's federal Employer Identification Number (EIN) | ☑ Unknown

EIN ___ – ___ ___ ___ ___ ___ ___ |
|---|---|---|

| 5. | Debtor's address | Principal place of business | Mailing address, if different |
|---|---|---|---|

Principal place of business:

1126   Wilshire Boulevard
Number   Street

Los Angeles        CA    90017
City               State  ZIP Code

LOS ANGELES
County

Mailing address, if different:

Number   Street

P.O. Box

City       State   ZIP Code

Location of principal assets, if different from
principal place of business

Number   Street

City       State   ZIP Code

| Debtor | **GIRARDI KEESE** | | Case number (if known) | |
| | Name | | | |

| 6. | Debtor's website (URL) | |

| 7. | Type of debtor | ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | X  Partnership (excluding  LLP) |
| | | ☐ Other type of debtor. Specify: |

| 8. | Type of debtor's business | **Check one:** |
| | | ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)) |
| | | ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) |
| | | ☐ Railroad (as defined in 11 U.S.C. § 101(44)) |
| | | ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)) |
| | | ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)) |
| | | ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)) |
| | | ☑ None of the types of business listed. |
| | | ☐ Unknown type of business. |

| 9. | To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor? | ☑ No |
| | | ☐ Yes. Debtor **Thomas Vincent Girardi**      Relationship **Owner/Partner** |
| | | District **Cent Dist of Ca, L.A** Date filed **12/18.2020** Case number, if known **2:20-bk-21020** |
| | | MM / DD /YYYY |
| | | Debtor                                               Relationship |
| | | District _____ Date filed _____ Case number, if known _____ |
| | | MM / DD / YYYY |

| **Part 3:** | **Report About the Case** |

| 10. | Venue | **Check one:** |
| | | ☑ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district. |
| | | ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district. |

| 11. | Allegations | Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b). |
| | | The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a). |
| | | *At least one box must be checked:* |
| | | ☑ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount. |
| | | ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. |

| 12. | Has there been a transfer of any claim against the debtor by or to any petitioner? | ☑ No |
| | | ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a). |

| Debtor | GIRARDI KEESE | Case number (if known) |
|---|---|---|
| | Name | |

| 11. Each petitioner's claim | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Jill O'Callahan | Breach of Contract | $ 787,500.00 |
| | Robert Keese | Breach of Contract | $1,557,600.00 |
| | John Abassian | Breach of Contract | $1,897,620.00 |
| | | Total of petitioners' claims | $ 6,510,518.76 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney. - SEE ATTACHMENT

**Part 4:** Request for Relief

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

| Petitioners or Petitioners' Representative | Attorneys |
|---|---|
| Name and mailing address of petitioner | Andrew Goodman, Esq. |
| | Printed name |
| Jill O'Callahan | GOODMAN LAW OFFICES, APC |
| Name | Firm name, if any |
| 1437 Club View Drive | 30700 Russell Ranch Rd., Suite 250 |
| Number   Street | Number   Street |
| Los Angeles      CA.      90024 | Westlake Village,   CA.      91362 |
| City             State    ZIP Code | City            State     ZIP Code |
| | Contact phone  818-802-5044   Email  agoodman@andyglaw.com |
| Name and mailing address of petitioner's representative, if any | Bar number  115685 |
| Name | State  California |
| Number   Street | |
| City             State    ZIP Code | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  12/17/2020
MM /DD /YYYY

X _(signature)_ Jill O'Callahan
Signature of petitioner or representative, including representative's title

X _(signature)_
Signature of attorney

Date signed  12/17/2020
MM /DD /YYYY

GIRARDI KEESE

**Name and mailing address of petitioner**

Robert Keese

**Name**

22982 Rosemont Court

**Number   Street**

Murrieta,                    CA.      92562

**City                              State        ZIP Code**

Name and mailing address of petitioner's representative, if any

**Name**

**Number   Street**

**City                              State        ZIP Code**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12 16 20
             **MM / DD / YYYY**

_Signature of petitioner or representative, including representative's title_

Andrew Goodman, Esq.

**Printed name**

GOODMAN LAW OFFICES, APC

**Firm name, if any**

30700 Russell Ranch Rd., Suite 250

**Number   Street**

Westlake Village,       CA.      91362

**City                        State        ZIP Code**

Contact phone  818-802-5044   Email agoodman@andyglaw.com

Bar number     115685

State           CA

_Signature of attorney_

Date signed 12/17/2020
             **MM / DD / YYYY**

---

Name and mailing address of petitioner

John Abassian

**Name**

6403 Van Nuys Boulevard

**Number   Street**

Van Nuys                    CA.      91401

**City                              State        ZIP Code**

Name and mailing address of petitioner's representative, if any

**Name**

**Number   Street**

**City                              State        ZIP Code**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
             **MM / DD / YYYY**

_Signature of petitioner or representative, including representative's title_

Andrew Goodman, Esq.

**Printed name**

GOODMAN LAW OFFICES, APC

**Firm name, if any**

30700 Russell Ranch Road, Suite 250

**Number   Street**

Westlake Village,       CA.      91362

**City                        State        ZIP Code**

Contact phone  818-802-5044   Email agoodman@andyglaw.com

Bar number     115685

State           CA.

_Signature of attorney_

Date signed 12/17/2020
             **MM / DD / YYYY**

Official Form 205               Involuntary Petition Against a Non-Individual               page 4

Debtor   **GIRARDI KEESE**
Name

Case number (if known)

---

**Name and mailing address of petitioner**

Robert Keese
Name

22982 Rosemont Court
Number   Street

Murrieta,          CA.          92562
City               State        ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number   Street

City               State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
            MM  / DD / YYYY

✖ _____

Signature of petitioner or representative, including representative's title

---

Andrew Goodman, Esq.
Printed name

GOODMAN LAW OFFICES, APC
Firm name, if any

30700 Russell Ranch Rd., Suite 250
Number   Street

Westlake Village,          CA.          91362
City                       State        ZIP Code

Contact phone  818-802-5044    Email agoodman@andyglaw.com

Bar number          115685

State          CA.

✖ _____

Signature of attorney

Date signed   12/16/2020
              MM  / DD / YYYY

---

**Name and mailing address of petitioner**

John Abassian
Name

6403 Van Nuys Boulevard
Number   Street

Van Nuys          CA.          91401
City              State        ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number   Street

City               State        ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/17/2020
            MM  / DD / YYYY

✖ _____

Signature of petitioner or representative, including representative's title

---

Andrew Goodman, Esq.
Printed name

GOODMAN LAW OFFICES, APC
Firm name, if any

30700 Russell Ranch Road, Suite 250
Number   Street

Westlake Village,          CA.          91362
City                       State        ZIP Code

Contact phone  818-802-5044    Email agoodman@andyglaw.com

Bar number          115685

State          CA.

✖ _____

Signature of attorney

Date signed   12/17/2020
              MM  / DD / YYYY

---

# EXHIBIT 5

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Girardi Keese |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court | **Central District of California** |
| Case number: | **20-21022** |

FILED

U.S. Bankruptcy Court
Central District of California

7/19/2021

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Edelson PC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Edelson PC | |
| Name | Name |
| 150 California Street, 18th Floor<br>San Francisco, CA 94111 | |
| Contact phone  415-212-9300 | Contact phone |
| Contact email<br>  rbalabanian@edelson.com | Contact email |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. Do you have any number you use to identify the debtor? | ☒ No ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|

| 7. How much is the claim? | $ 2063292.00 | **Does this amount include interest or other charges?** ☒ No ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br> Limit disclosing information that is entitled to privacy, such as healthcare information. <br><br> Attorneys' fees due under written agreements. |
|---|---|

| 9. **Is all or part of the claim secured?** | ☒ No <br> ☐ Yes. The claim is secured by a lien on property. <br> **Nature of property:** <br> ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.* <br> ☐ Motor vehicle <br> ☐ Other. Describe: _____ <br><br> **Basis for perfection:** _____ <br><br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of property:**   $ _____ <br> **Amount of the claim that is secured:**   $ _____ <br> **Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:**   $ _____ <br><br> **Annual Interest Rate** (when case was filed)   ____ % <br> ☐ Fixed <br> ☐ Variable |
|---|---|

| 10. Is this claim based on a lease? | ☒ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|

| 11. Is this claim subject to a right of setoff? | ☒ No <br> ☐ Yes. Identify the property: _____ |
|---|---|

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | | |
| | | ☐ Yes. *Check all that apply:* | | | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    7/19/2021
                    MM / DD / YYYY

/s/ Rafey S. Balabanian
Signature

Print the name of the person who is completing and signing this claim:

Name    Rafey S. Balabanian
         First name    Middle name    Last name

Title    Managing Partner

Company    Edelson PC
           Identify the corporate servicer as the company if the authorized agent is a servicer

Address    150 California Street, 18th Floor
           Number    Street
           San Francisco, CA 94111
           City    State    ZIP Code

Contact phone    415-212-9300    Email    rbalabanian@edelson.com

# PROOF OF SERVICE

1

2 STATE OF CALIFORNIA            )

3 COUNTY OF LOS ANGELES )
                                )

4

5       I am employed in the County of Los Angeles, State of California.  I am
over the age of 18 and not a party to the within action; my business address is

6 10100 Santa Monica Boulevard, Suite 1200, Los Angeles, California 90067.

7       On **September 20, 2022**, the foregoing document described as:

8 **"REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT
DAVID LIRA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

9 **FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TRANSFER
VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA"** has been

10 served on interested party(ies) in this action as follows:

11

12              **\*\* SEE ATTACHED SERVICE LIST \*\***

13

14   ✓         BY EMAIL/ELECTRONIC TRANSMISSION: Based on a court
              order or an agreement of the parties to accept service by e-mail or electronic

15            transmission, I caused the documents to be sent to the persons at the e-mail
              addresses listed below.  I did not receive, within a reasonable time after the

16            transmission, any electronic message or other indication that the
              transmission was unsuccessful.

17

18   ✓         (STATE) I declare under penalty of perjury under the laws of the State

19            of California that the above is true and correct.

20

21       Executed on **September 20, 2022** at Los Angeles, California.

22

23       _____

24              NORMA ROBLES

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST

### *EDELSON PC, v. DAVID LIRA et al.*

### Case No. 3:22-cv-03977-SK

| | |
|---|---|
| Rafey S. Balabanian, Esq.<br>**EDELSON PC**<br>150 California Street, 18th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 212-9300<br>Facsimile: (415) 373-9435<br>Email: rbalabanian@edelson.com | Counsel for Plaintiff Edelson PC |
| Alexander Glenn Tievsky<br>J. Eli Wade- Scott<br>Jay Edelson<br>**Edelson PC**<br>350 North LaSalle, 14th Floor<br>Chicago, IL 60654<br>atievsky@edelson.com<br>ewadescott@edelson.com<br>jedelson@edelson.com | Counsel for Plaintiff Edelson PC |
| Evan C. Borges<br>**Greenberg Gross LLP**<br>650 Town Center Drive, suite 1700<br>Costa Mesa, CA 92626<br>eborges@GGtriallaw.com<br>CWinsten@GGTrialLaw.com | Counsel for Defendants Erika Girardi<br>aka Erika Jayne and EJ Global, LLC |
| Jeff Wiley Poole<br>**Hamrick & Evans LLP**<br>2600 West Olive Avenue, Suite 1020<br>Burbank, CA 91505<br>jpoole@hamricklaw.com | Counsel for Defendant Joseph DiNardo |

| | |
|---|---|
| Anthony L. Lanza<br>Brodie H. Smith<br>LANZA & SMITH<br>A Professional Law Corporation<br>3 Park Plaza, Suite 1650<br>Irvine, California 92614-8540<br>tony@lanzasmith.com<br>brodie@lanzasmith.com | Attorneys for Defendants George<br>Hatcher & Wrongful Death Consultants |
| Richard M. Scherer, Jr.<br>Lippes Mathias Wexler Friedman LLP<br>50 Fountain Plaza, Suite<br>1700 Buffalo, NY 14202<br>rscherer@lippes.com | Counsel for Defendant Joseph DiNardo |
| Sean Eric Ponist<br>**Ponist Law Group, P.C.**<br>100 Pine Street, Suite 1250 San<br>Francisco, CA 94111<br>sponist@ponistlaw.com | Counsel for Defendant California<br>Attorney Lending II, Inc. |
| William F. Savino<br>**Woods Oviatt Gilman LLP**<br>1900 Main Place Tower<br>350 Main Street<br>Buffalo, NY 14202<br>wsavino@woodsoviatt.com | Counsel for Defendant California<br>Attorney Lending II, Inc. |
| William E Brueckner , III<br>**Woods Oviatt Gilman LLP**<br>1900 Bausch & Lomb Place<br>Rochester, NY 14604<br>wbrueckner@woodsoviatt.com | Counsel for Defendant California<br>Attorney Lending II, Inc. |