William F. Savino (admitted *pro hac vice*)
William E. Brueckner (admitted *pro hac vice*)
**WOODS OVIATT GILMAN LLP**
1900 Main Place Tower
350 Main Street
Buffalo, New York 14202
716.248.3200
wsavino@woodsoviatt.com
wbrueckner@woodsoviatt.com

Sean E. Ponist (SBN 204712)
Cary D. McReynolds (SBN 191112)
Samantha Yu (SBN 317719)
**PONIST LAW GROUP**
100 Pine Street, Suite 1250
San Francisco, California 94111
415.798.2222
sponist@ponistlaw.com
cmcreynolds@ponistlaw.com
syu@ponistlaw.com

Attorneys for Defendant California Attorney Lending II, Inc.

## THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| EDELSON, P.C., and Illinois professional corporation,<br><br>　　　　Plaintiff,<br><br>　　-vs.-<br><br>DAVID LIRA, an individual, KEITH GRIFFIN, an Individual, ERIKA GIRARDI aka ERIKA JAYNE, an Individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California Corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation,<br><br>　　　　Defendants. | Case No. 3:22-cv-03977<br><br>**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE OR FOR FAILURE TO STATE A CLAIM**<br><br>Hearing Date: November 7, 2022<br>Hearing Time: 9:30 a.m.<br>Courtroom:  C<br><br>Complaint Filed:  July 6, 2022<br>Trial Date:  N/A |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES TO THIS ACTION AND THEIR ATTORNEY(S) OF RECORD:**

PLEASE TAKE NOTICE that on November 7, 2022, at 9:30 am, in Courtroom C of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant California Attorney Lending II, Inc. ("*CAL II*"), will hereby move to dismiss the Compliant filed by Plaintiff Edelson, P.C. ("Edelson"), as it relates to CAL II.

This Motion is made pursuant to 28 USC §1391(b)(2) and Federal Rule of Civil Procedure 12(b)(3) and (6), on the following grounds:

(1) Plaintiff has not met its burden of proving that all Defendants are residents of the State of California or that a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of California; (2) Plaintiff did not acquire any enforceable claim by its assignment; (3) Plaintiff's claim for "money had and received" is barred by the applicable statute of limitations; (4) Plaintiff's own allegations defeat the plausibility of its claim for "money had and received;" (5) Plaintiff cannot maintain its claim brought pursuant to California Business and Professional Code §17200 et seq.; (6) Plaintiff did not file the venue affidavit required by the Consumer Legal Remedies Act; (7) Plaintiff did not serve the mandatory pre-complaint notice and demand; and (8) Plaintiff does not state a plausible claim for "unconscionability."

This Motion is based on the Notice of Motion, the attached Memorandum of Point and Authorities, the concurrently filed Declaration of Paul Cody, with Exhibits (the "*Cody Declaration*"), all other matter of which this Court may take judicial notice, the pleadings, files and records in this action, and on such other argument as may be heard by this Court.

DATED:   September 21, 2022          **WOODS OVIATT GILMAN LLP**

By:      /s/ William E. Brueckner                   .
William F. Savino (admitted *pro hac vice*)
William E. Brueckner (admitted *pro hac vice*)
*Counsel for Defendant California Attorney Lending II, Inc.*

1

2

**PONIST LAW GROUP, PC**

3
By:  /s/ Sean Ponist
Sean E. Ponist

4
Cary D. McReynolds

5
Samantha Yu
*Counsel for Defendant California Attorney Lending II, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Table of Contents

2

I.       INTRODUCTION------------------------------------------------------------------------------- 7

3

II.      STATEMENT OF ISSUES -------------------------------------------------------------------- 7

4

III.    FACTUAL AND PROCEDURAL BACKGROUND: ------------------------------------- 7

5

IV.    LEGAL ARGUMENT ----------------------------------------------------------------------- 11

6

A. THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A PROPER
VENUE. ---------------------------------------------------------------------------------------- 12

7

8

B.  PLAINTIFF'S CLAIMS AGAINST CAL II ARE NOT PLAUSIBLE ON
THEIR FACE AND MUST BE DISMISSED PURSUANT TO FRCP 12(b)(6). --------- 13

9

1. Plaintiff Did Not Acquire Any Enforceable Claim by Its Assignment. --------- 14

10

2. Plaintiff Cannot Maintain Its Claim For Money Had and Received. ------------ 16

11

a.  This Claim is Barred by the Statute of Limitations ---------------------------- 16

12

b.  Plaintiff's Own Allegations Defeat the Plausibility of Its Claim for
Money Hand and Received --------------------------------------------------------- 16

13

14

C.  PLAINTIFF CANNOT MAINTAIN ITS CLAIM BROUGHT PURSUANT
TO CALIFORNIA BUSINESS AND PROFESSIONAL CODE §17200 ET SEQ. ------ 18

15

16

D. PLAINTIFF HAS NOT SATISFIED THE CONDITIONS PRECEDENT TO
ASSERTING A CLAIM FOR DAMAGES UNDER THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT. -------------------------------------------------- 19

17

1.  Edelson Did Not File the Venue Affidavit Required by the CLRA ------------ 20

18

2.  Edelson Did Not Serve the Mandatory Pre-Complaint Notice and
Demand --------------------------------------------------------------------------------- 20

19

20

3.  Edelson Does Not State a Plausible Claim for Unconscionability -------------- 20

21

E. EDELSON CANNOT BE AWARDED PUNITIVE OR EXEMPLARY
DAMAGES. ----------------------------------------------------------------------------------- 22

22

V.     CONCLUSION ---------------------------------------------------------------------------- 22

23

24

25

26

27

28

{8985876: }

4

DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER
VENUE OR FOR FAILURE TO STATE A CLAIM CASE NO. 3:22-CV-03977

TABLE OF AUTHORITIES

**<u>Cases</u>**

*American Surety Co. v. Bank of California*, 133 F.2d 160 (9th Cir. 1943) ................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................14, 17, 19, 21

*Avidor v. Sutter's Place Inc.*, 212 Cal.App.4th 1439 (2013) .............................................16, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................14, 18, 21

*Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ..................................................13

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) .......................................8

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 n. 16 (11th Cir. 1999) .............................................8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) ...........................................................................................................18

*Christopher v. Harbury*, 536 U.S. 403 (2002) .....................................................................14

*Cleveland v. Policy Management Systems Corp.* 120 F.3d 513 (5th Cir 1997) ............................21

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (ND Cal 2021) ...............................................19

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...............................................8

*Erickson v. Pardus*, 551 U.S. 89 (2007) .............................................................................14

*Farmers Ins. Exchange v. Zerin,* 53 Cal.App.4th 445 (1997) ....................................................17

*French v. Orange County Inv. Corp.* 125 Cal.App. 587 (1932) ..................................................22

*Goldman v. Lombardi*, 135 Cal.App.2d Supp. 851 (1955) ......................................................16

*In re Gilead Sciences. Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008) ............................19

*In re Tracht Gut, LLC*, 836 F.3d 1146 (9th Cir. 2016) ................................................17, 19, 21

*Johnson v. Federal Home Loan Mortg. Corp.*, 793 F.3d 1005 (9th Cir. 2015) ................................8

*Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2015) ...................................14

*Metropolitan Trust Co.*, 17 Cal.2d 484 (1941) ..................................................................16

*Meyer v. Bank of America N.T. & S. Association,* 11 Cal. 2d 92 (1938) ......................................15

*Murphy* v. *Allstate Ins. Co.* 17 Cal.3d 937 (1976) ...........................................................22

*Murphy v. American General Life Insurance Co.*, 74 F.Supp.3d 1267 (C.D.Cal 2015) .......................16

*Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) ..........................8

{8985876: }                                    5

DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER
VENUE OR FOR FAILURE TO STATE A CLAIM CASE NO. 3:22-CV-03977

*Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192 (3rd Cir. 1993) .................................................................................................................8

*People* v. *Superior Court* 9 Cal.3d 283 (1973) ..........................................................22

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979)..................12, 13

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal.App.4th 899 (2015) ......................................21

*Weiss v. Marcus*, 51 Cal.App.3d 590 (1975) ................................................................17

**Statutes**

Business and Professional Code Section 17200 ................................................................16

Cal. Code Civ. Proc. 339(1)...........................................................................14, 15

California Civil Code §1750...........................................................................................18

California Civil Code §1780(d) ....................................................................................18

California Civil Code §1782(a)(1) ................................................................................18

**Rules**

28 USC § 1391(c)(1)...........................................................................................................11

28 USC §1391(b) ................................................................................................................11

28 USC §1391(b)(2) ........................................................................................5, 6, 11, 21

Federal Rule of Civil Procedure 10 ..................................................................................7

Federal Rule of Civil Procedure 12(b)(3) ................................................................5, 6, 12, 21

Federal Rule of Civil Procedure 12(b)(6) ................................................................ passim

Federal Rule of Civil Procedure 8(a)(2) ........................................................................13

Rules of Professional Conduct 5.4(a) ..............................................................................17

**Authorities**

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1216 (3d ed. 2004) ..............................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant California Attorney Lending II, Inc. ("*CAL II*"), brings this Motion, pursuant to 28 USC §1391(b)(2) and Federal Rule of Civil Procedure 12(b)(3) and (6), to dismiss the claims asserted against CAL II in the Complaint ("*Complaint*") filed in this Action.

Initially, this judicial district is an improper venue for the determination of the dispute.  No substantial part of the events giving rise to the claim occurred in this District.  The Complaint asserts tort claims:  no substantial tortious act occurred in the Northern District of California, and none of the harms arising from the alleged torts were felt in the Northern District of California.  Furthermore, Plaintiff Edelson PC ("*Plaintiff*" or "*Edelson*") has no standing to bring the claims asserted in the Complaint, because it asserts claims solely as an assignee, and the claims of its assignors have been fully satisfied.

The Court need not, however, rely on purely procedural bases to dismiss the claims as to CAL II: there are also substantive grounds for dismissal.  As this Memorandum explains, the pleading purports to assert three claims against CAL II: (1) those claims that find their gravamen in "money had and received"; (2) purported violations of the California Business and Professional Code; and (3) purported violations of the Consumer Legal Remedies Act.  Given the facts conceded in the Complaint, none of the claims state a plausible claim demonstrating Edelson's right to relief, and all must be dismissed.

Accordingly, this Court should grant an Order, pursuant to 28 USC §1391(b)(2) and FRCP 12(b)(3) and (6), dismissing Plaintiff's Complaint against CAL II in its entirety and with prejudice.

### II.   STATEMENT OF ISSUES

This motion presents the following issues:

- Should the action be dismissed pursuant to Rule 12(b)(3) where, as here, none of the grounds for venue exist under 28 USC §1391(b) and venue is otherwise improper?

- Should the claims against CAL II be dismissed where, as here, the allegations are contradicted by the documents referenced and relied upon and are otherwise insufficient to state a cause of action under Rule 12(b)(6)?

### III.   FACTUAL AND PROCEDURAL BACKGROUND:

CAL II is a fully licensed and authorized lender in the State of California. *Cody Declaration*, at

¶2.

CAL II provides loans and working capital lines of credit plaintiffs' law firms located in California that are in the business of prosecuting contingency cases. *Id.,* at ¶3.

Starting in 2011, CAL II provided a working line of credit to Girardi Keese, a plaintiffs' law firm based in Los Angeles, California, as evidenced by certain promissory notes, security agreements, guaranties, and other loan documentation executive in connection therewith (collectively, the "*Loan Agreements*"). *Cody Declaration*, at ¶¶4 - 5 and Exhibit A].[1]

CAL II's Loan Agreements with Girardi Keese included an absolute obligation to repay the borrowed funds from whatever source derived, as they did with CAL II's other borrowers. *Id.*, ¶10. The Loan Agreements did not require Girardi Keese to share legal fees with CAL II. *Id.*, ¶¶10 – 11. Rather, the Loan Agreements granted CAL II a collateral security interest in the contractual rights, including attorneys' fees both earned and not yet earned, and other accounts receivable owned to Girardi Keese. *Cody Declaration*, ¶¶ 5 – 7.

More particularly, the most recent security agreement executed by Girardi Keese in favor of CAL II, the Fourth Amended and Restated Security Agreement (the "*Security Agreement*"), provides, *inter alia*:

> The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent,

---

[1]  The Loan Agreements are referenced and relied upon in the Complaint in, *inter alia*, paragraphs 93, 307 – 309, and 341 – 43.  A court should not accept as true allegations which are contradicted by documents referenced in the complaint. *Johnson v. Federal Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-1008 (9th Cir. 2015).  Likewise, a court may consider extrinsic evidence not attached to complaint if the document's authenticity not reasonably contested and plaintiff's complaint relies on it.  *Id.*; see also, *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-1207 (5th Cir. 1975).

Where, as here, a plaintiff fails to attach integral documents to its complaint, a defendant may attach to its Rule 12(b)(6) motion any such documents referred to or relied upon in the complaint to show that they do not support plaintiff's claim. See *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280, n. 16 (11th Cir. 1999); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) [court ruling on motion to dismiss must consider entire complaint and other sources incorporated by reference as well as judicially noticeable matters]; see also, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159-1160 (9th Cir. 2012).

The foregoing prevents "a plaintiff with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

1   hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note)
2   whether or not yet earned by performance and the proceeds thereof, including Net
    Fees and Expenses (as defined in the Note).

3   *Cody Declaration*, Exhibit A, p 27.

4       CAL II's security interest was duly perfected by the filing of a UCC-1 financing statement

5   in the Office of the California Attorney General against Girardi Keese on July 6, 2011, designated

6   as Filing No 11-7275806299 (as amended and continued by UCC-3 financing statement to the

7   present.[2]   *Cody Declaration*, at ¶7 and Exhibit B.

8       Plaintiff's Complaint in this action was filed on July 6, 2022.[3]   *Docket No*. 1. The Complaint

9   alleges that Plaintiff served as co-counsel to Girardi Keese in the litigation arising from the tragic crash

10  of Lion Air Flight JT 610 (the "*Lion Air Litigation*"). *Id*., ¶96. The Lion Air Litigation was brought and is

11  pending in the Northern District of Illinois, where Plaintiff maintains its primary place of business.

12  *Docket No. 1*, ¶¶24, 96. The clients represented by Girardi Keese, and purportedly by Plaintiff, in the

13  Lion Air Litigation (the "*Lion Air Families*" or "*Lion Air Clients*") settled their cases, and those

14  settlements were funded.  *Docket No. 1*, ¶¶ 100, 101.

15      As is customary, the payment of the contingency fees due and earned by plaintiffs' counsel – here,

16  Girardi Keese pursuant to Attorney Representation Agreements executed by the Lion Air Clients – were

17  deducted from the Lion Air Clients' gross recoveries. Pursuant to Girardi Keese's instruction, defense

18  counsel in the Lion Air Litigation distributed a part of Girardi Keese's earned contingency fee – the

19  accounts receivable in which CAL II held an undisputed duly perfected security interest – directly to

20

21  [2]   The financing statement, as amended describes the collateral as "[a]ll right, title and interest in all
      Goods (including Equipment, Fixtures, and Inventory) Money (including Promissory Notes),
22    Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of Credit Rights,
      Documents and General Intangibles (including payment intangibles), Commercial Tort Claims
23    described in the Questionnaire, Insurance Proceeds and any other personal property (whether or
      not subject to the UCC), and all interest, dividends and other distribution thereon paid and
24    payable in cash or in property, and all replacements and substitutions for, and all accessions and
      additions to, and all profits, offspring, Product and other Proceeds of, all of the foregoing … ."
      *Cody Declaration*, Exhibits A and B.
25
    [3]   The Complaint utterly disregards the basic rules of federal pleading.  A complaint filed in federal
26    court must contain "a short and plain statement of the claim showing that the pleader is entitled to
      relief." *Fed. R. Civ. P.* 8(a)(1). Each allegation must be simple, concise, and direct. Each claim
27    must be stated in numbered paragraphs, and each numbered paragraph limited as far as
      practicable to a single set of circumstances. *Fed. R. Civ*. P. 10. Plaintiff's convoluted Complaint is
28    neither short nor plain, and it does not establish that Plaintiff is entitled to any relief against CAL
      II.

CAL II, *Docket No. 1* at ¶310; *Request for Judicial Notice*, Exhibit 1.  As such, CAL II only received that portion of the gross recovery due to Girardi Keese in connection with its representation of the Lion Air Clients – not any Lion Air Clients' net proceeds.  *Docket No 1,* ¶101.

Plaintiff's malpractice insurer ultimately paid the Lion Air Families the net proceeds of their settlements in the Lion Air Litigation. *Request for Judicial Notice*, Exhibit 2 and 3. By its Complaint, Plaintiff – as assignee of the Lion Air Families – demands recovery from CAL II, asserting three legal theories:  (1) "money had and received" (Fifth Cause of Action); (2) unlawful business practice under a California consumer protection statute (Seventh Cause of Action); and (3) a claim brought under California's Consumers' Legal Remedies Act (Eighth Cause of Action).  Though Plaintiff's make-whole payment to the Lion Air Families totaled only $2,500,000, *Request for Judicial Notice*, Exhibit 2 and 3. Plaintiff's Complaint incredulously demands judgment against nine different Los Angeles- and Buffalo-based defendants for $22,096,000 in compensatory damages, and another $55,000,000 in punitive or exemplary damages.  *Docket No. 1*, at pp. 59 – 60.

Whatever effectiveness the Complaint may have in drawing the attention of Hollywood tabloids, it is entirely inadequate to plead a cognizable legal theory in federal court against CAL II. The brazen disingenuity of Edelson's claims against CAL II is shocking. Edelson devotes 60 pages of crime-story hyperbole to some alleged "undisclosed conspiracy," casting CAL II as a shadowy functionary and co-conspirator in a family crime syndicate.  But, hundreds of paragraphs into its tale, Edelson lets slip a damning truth: the funds paid to CAL II were not secretly misappropriated.  Instead, according to Plaintiff, the direct payments to CAL II were expressly disclosed to the Lion Air Families, and consented to by them (as a term of the very settlement agreements that entitled the Lion Air Families to any funds). *Docket No. 1*, ¶¶ 310, 346.  Almost certainly, as co-counsel to the settling Lion Air Families, and in alleging as much in its Complaint, Edelson itself knew of these direct payments.  Indeed, as Edelson avers, in most instances, the payments were approved by Court order!  *Docket No. 1*, ¶100. Notwithstanding these acknowledged facts, Edelson's Complaint strains to pervert entirely transparent, reasonable, and ordinary commercial transactions into multi-million dollar thefts.

CAL II brings this Motion to Dismiss the Complaint as to CAL II.

IV.   **LEGAL ARGUMENT**

Three key concessions are fatal to Plaintiff's claims against CAL II.

*First*, Plaintiff acknowledges – and the documents submitted in support of this Motion establish – that there is nothing sinister about CAL II's general operations or its role as a secured lender to Girardi Keese.  *Docket No. 1* ¶93 ("in exchange for the additional loans, [Girardi Keese] agreed that CAL II would receive 50% of the attorneys' fees from various cases when they settle, including from the Lion Air Clients.")

*Second*, Plaintiff concedes that it is a mere assignee of the Lion Air Clients, see, *e.g. Docket No. 1* ¶22, and Plaintiff has represented to the Courts in related litigation that it has made the Lion Air Clients whole with respect to the funds it alleges were paid to CAL II.  *Request for Judicial Notice*, Exhibits 2 and 3 (Edelson represents that "the Assignment Agreement is effective and that wire transfer in the amounts set forth in that Agreement have been sent to the Indonesian bank accounts of [the Lion Air Clients].").  Because the Lion Air Clients have been made whole, they have no enforceable claim to assign to Edelson.

*Third*, Plaintiff's allegations provide that – before any funds were directed and to CAL II (or any other recipient arising out of the settlement of the Lion Air Clients' claims) – the Lion Air Families were advised and consented to CAL II's receipt of <u>only</u> that portion of the settlement "representing Girardi Keese's portion of attorneys' fees." *Docket No. 1* at ¶¶ 310 and 346. The consent, according to Edelson, was contained in the Lion Air Clients' settlement agreements, many of which were approved by the Court overseeing those cases.  *Docket No. 1*, at 100.  As a result, the Lion Air Families – whose rights Plaintiff litigates in this Action – acknowledged Girardi Keese's right to its earned contingency fee, and have no meritorious basis to object to CAL II's exercise of its rights as Girardi Keese's perfected secured creditor and its receipt of some portion of its collateral.

For the reasons explained hereafter, Plaintiff's claims are both procedurally and substantively fatally-deficient, and must be dismissed.[4]

---

[4]     In this diversity action, this Court should apply federal procedural rules and the substantive law of the State of California.  Under the Erie Doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *In re County of Orange*, 784 F.3d 520, 523 – 24 (9th Cir. 2015), quoting, *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The

## A.

## THE NORTHERN DISTRICT OF CALIFORNIA IS NOT A PROPER VENUE.

Edelson bears the burden to prove that the Northern District of California is an appropriate venue for this action. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

Federal procedural law permits venue to be established on any of three separate bases.  Pursuant to 28 USC §1391(b), a federal civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 *USC* §1391(b).

The Complaint alleges that Defendant Joseph DiNardo is a natural person domiciled in the State of New York.  *Docket No. 1*, ¶32; see also, 28 USC § 1391(c)(1) ("a natural person … shall be deemed to

---

forum state's choice of law rules control which state's substantive law and rules of decision apply. *CRS Recovery, Inc., v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010).

California's choice of law rules are very straightforward: "As a default under California choice-of-law rules, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010), citing *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("Under California's choice of law rules, California will apply its own rule of decision unless a party invokes the law of a foreign state that will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it."); *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41 (2005) ("In order to persuade a California court to apply the law of another forum, the proponent of the other forum's laws must invoke the law of the foreign jurisdiction, show that it materially differs from California law, and demonstrate how applying that law will further the interest of the foreign jurisdiction. Otherwise, a California court will apply its own rules of decision.").

Accordingly, this Court must evaluate the Complaint using federal procedural rules and the substantive law of the forum state – the State of California.

reside in the judicial district in which that person is domiciled"). As such, all the defendants in this action <u>are</u> <u>not</u> residents of the State of California, and venue cannot be based on 28 USC §1391(b)(1).

Further, a substantial part of the events or omissions giving rise to the claim occurred, in the Northern District of Illinois, where the Lion Air Litigation is being litigated (and where Plaintiff's primary place of business is located) or in the Central District of California (where the Girardi Keese offices were located), so venue cannot be established based on 28 USC §1391(b)(2).

While the Ninth Circuit takes a broad view in tort cases, and has recognized that the location of the injury is a relevant factor in determining whether there is proper venue under "substantial part" analysis, see *Myers v. Bennett Law Offices*, 238 F.3d 1068, at 1076 (9th Cir. 2001), nothing in the Complaint suggests that any of the injuries forming the basis of Plaintiff's claims were suffered in this judicial district.  Indeed, the Complaint acknowledges that Plaintiff is the assignee of five families residing in the Philippines – the location of those families' injuries is not in the Northern District of California. See, *Myers,* 238 F.3d at 1076 (location of individual's economic injuries is the place where the individual resides).

Finally, Section 1392(b)(3) allows venue to lie in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action, "if there is no district in which an action may otherwise be brought as provided in this section." Here, there is another district in which the matter might have, and should have, been brought – i.e. the Central District of California, where a majority of the parties reside and where the overwhelming majority of the events and omissions giving rise to the claims occurred.

Accordingly, Plaintiff has failed to meet its burden of proving that the Northern District of California is an appropriate venue for this action. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). This Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3).

**B.**

**PLAINTIFF'S CLAIMS AGAINST CAL II ARE NOT PLAUSIBLE ON THEIR FACE
AND MUST BE DISMISSED PURSUANT TO FRCP 12(b)(6).**

DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER
VENUE OR FOR FAILURE TO STATE A CLAIM CASE NO. 3:22-CV-03977

1   Assuming that this matter is not dismissed for Plaintiff's selection of an improper venue, it should

2   be dismissed under Rule 12(b)(6).

3   A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a

4   complaint. See, *Fed. R. Civ. Pro*. 12(b)(6).  In assessing legal sufficiency, courts are bound to apply the

5   pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

6   662 (2009). That is, "a complaint must … contain sufficient factual matter, accepted as true, to 'state a

7   claim to relief that is plausible on its face.'" *Landers v. Quality Communications, Inc*., 771 F.3d 638, at

8   679 (9th Cir. 2015).  In evaluating whether a complaint states a plausible claim for relief, a court must

9   rely on "judicial experience and common sense" to determine whether the factual allegations plausibly

10  give rise to an entitlement to relief. *Id.*, at 679.

11  Of course, in addressing a motion to dismiss, a court must construe the complaint in the light

12  most favorable to the plaintiff and accept as true all of plaintiff's factual allegations.  See, *Christopher v.*

13  *Harbury*, 536 U.S. 403, 406 (2002); *Erickson v. Pardus*, 551 U.S. 89, 93 – 94 (2007). However,

14  pleadings that "are no more than conclusions are not entitled to an assumption of truth.  While legal

15  conclusions can provide a framework of a complaint, they must be supported by factual allegations."

16  *Iqbal*, 556 U.S. at 679. A pleading that offers "labels and conclusions, and a formulaic recitation of the

17  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be

18  enough to raise a right to relief above the speculative level." *Id*., citing 5 C. Wright & A. Miller,

19  FEDERAL PRACTICE AND PROCEDURE §1216 (3d ed. 2004).  Federal Rule of Civil Procedure 8(a)(2)

20  requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

21  678.

22  **1.   Plaintiff Did Not Acquire Any Enforceable Claim by Its Assignment.**

23  Plaintiff's champertous effort to acquire (and multiply) the Lion Air Families' claims is not legally

24  effective in the State of California. Accordingly, Plaintiff may not maintain this action, and the

25  Complaint must be dismissed in its entirety.

26  Plaintiff brings its claims only as an assignee – not as a subrogee.  *Docket No. 1*, ¶22 ("Plaintiff

27  Edelson PC, as assignee of the Lion Air Clients, brings this lawsuit against Defendants"). This distinction

28  is absolutely critical, because the claims that were assigned to Plaintiff had been satisfied in full prior to

their assignment.  *Request for Judicial Notice*, Exhibits 2 and 3.  Because no enforceable claim existed to be assigned, there is no claim that can support recovery for Plaintiff.

This rule – and the critical distinction between subrogation and assignment – is carefully explained in *American Surety Co. v. Bank of California*, 133 F.2d 160, 162 - 65 (9th Cir. 1943).  There, a dishonest employee forged a number of checks and misappropriated the employer's funds.  *American Surety*, 133 F.2d at 161. The employer's surety paid the employer's losses, took an assignment of the employer's claims, and then brought suit against the employer's bank, alleging that the bank should not have paid the forged checks.  *Id.*

The Ninth Circuit noted that under California law, subrogation claims against third parties (as opposed to claims against the principal) are only available to a claimant who is favored by the equities as against the third party.  Because the surety had undertaken an express agreement to pay the employer's losses arising from employee dishonesty, the equities did not favor the surety as against the bank who had no actual knowledge of the employee's defalcation (even if it might have been charged with constructive notice of the forgery). *Id.*, at 164.

Because the surety had no subrogation rights, its rights as against the bank were limited to rights acquired by the assignment. The Ninth Circuit determined those assignment rights were ineffective to permit recovery by the assignee:

> When (Plaintiff) paid (the assignor), the right of (Plaintiff) to pursue its claim against (Defendant) was destroyed as (the assignor) could not be permitted a dual recovery. Therefore, there was in existence no enforceable claim against (Defendant) which (assignor) could assign to (Plaintiff) and which would support recovery in favor of (Plaintiff). … Assignment necessarily contemplates the continued existence of the debt or claim assigned.

*American Surety Co. v. Bank of California*, 133 F.2d 160, 164 – 65 (9th Cir. 1943); accord, *Meyer v. Bank of America N.T. & S. Association,* 11 Cal. 2d 92 (1938).

Here, Plaintiff has paid the Lion Air Families' claim in full prior to taking the assignment of their claims.  *Request for Judicial Notice*, Exhibits 2 and 3. Like the payment to the employer in *American Surety*, Plaintiff's payment to the Lion Air Families voided the Lion Air Families' right to pursue their claims, as the assigned claims were satisfied, and no longer continued to exist.  Therefore, there is no enforceable claim that was assigned to Plaintiff, and its efforts to enforce those claims in this action are

legally ineffective.

The Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2.   Plaintiff Cannot Maintain Its Claim For Money Had and Received.

The Complaint's Fifth Cause of Action alleges that CAL II is liable to Plaintiff on the theory of "money had and received." *Docket No. 1* ¶¶306 – 316. This claim cannot be maintained because, first, it is untimely, and further, because, according to Edelson's own assertions, the Lion Air Families consented to Girardi Keese's receipt of its earned contingency fee. That consent precludes any allegation that the sums received by CAL II were "for the use of" the Lion Air Families.

### a.   This Claim is Barred by the Statute of Limitations.

Under California law, a claim for money had and received arises when the defendant becomes indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of plaintiff. *Avidor v. Sutter's Place Inc.*, 212 Cal.App.4th 1439, 1454 (2013). The limitations period for a claim of money had and received is two years. *Murphy v. American General Life Insurance Co.*, 74 F.Supp.3d 1267 (C.D.Cal 2015) (citing *Cal. Code Civ. Proc.* 339(1)). An action for money had and received is barred, under Section 339(1), if not filed within two years after such money is alleged to have been received by the defendants. See, *Goldman v. Lombardi*, 135 Cal.App.2d Supp. 851 (1955); *Orloff v. Metropolitan Trust Co.*, 17 Cal.2d 484 (1941).

The Complaint alleges that settlement funds earmarked by Plaintiff's assignors were transferred no later than June 9, 2020. *Docket No. 1* ¶101.  And the Complaint acknowledges that when those funds were transferred, a portion of each Girardi Keese contingency fee earned in respect of such settlement was wired directly to CAL II.  *Id.*, at ¶310.

Thus, to be timely, Plaintiff's claims were to be filed within two years after June 9, 2020, when CAL II received the last transfer of the funds at issue in this litigation.  See, *Cal. Code Civil Proc*. 339(1), *Goldman v. Lombardi*, supra.  This action was not filed until July 6, 2022, and accordingly, Plaintiff's Fifth Cause of Action is untimely.

### b.   Plaintiff's Own Allegations Defeat the Plausibility of Its Claim for Money Had and Received.

To properly plead a claim for money had and received under California law, a plaintiff must

allege: 1) that defendant is indebted to plaintiff in a certain sum; and 2) that the indebtedness is for money had and received by defendant for use of plaintiff. *Farmers Ins. Exchange v. Zerin,* 53 Cal.App.4th 445, 460 (1997).

The claim is viable "wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Weiss v. Marcus*, 51 Cal.App.3d 590, 599 (1975). A plaintiff must prove that the defendant received money intended to be used for the benefit of the plaintiff, that the money was not used for the plaintiff's benefit, and that the defendant has not given the money to the plaintiff. *Avidor v. Sutter's Place, Inc*., 212 Cal. App.4th 1439, 1454 (2013).

In light of the allegations in its own Complaint, Plaintiff cannot in any manner claim that the money received by CAL II belonged to the Lion Air Families and should "in equity and in good conscience" be returned to them. *Weiss v. Marcus*, 51 Cal.App.3d at 599. This is because funds received by CAL II were not only specifically designated as Girardi Keese's fees, but also, as the Complaint itself alleges, by the very terms of the settlement agreements resolving their claims, the Lion Air Families consented to Girardi Keese's receipt of the contingency fee it earned in representing those families, and agreed that a portion of that fee could be paid directly to CAL II. *Docket No. 1*, ¶¶ 310, 346.

Edelson clumsily attempts to remedy this defect by claiming that "Girardi Keese forfeited any claim of entitlement to attorneys' fees from the Lion Air Clients by stealing their money." *Docket No. 1*, ¶313.[5] This ignores Edelson's specific factual allegations regarding the timing and nature of the payment to CAL II, and is "no more than a legal conclusion" which is "not entitled to an assumption of truth," *Iqbal*, 556 U.S. at 679; *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016).

As the Complaint proclaims, Girardi Keese received no money relating to the Lion Air Families until after those families had agreed that Girardi Keese had earned a fee, and consented to the payment of a portion of that fee to CAL II.  Docket No. 1, ¶¶310, 346. As a mathematical tautology, any "theft" of the Lion Air Families could not have related to the funds transferred to CAL II: those funds consisted of

---

5  Edelson also claims that "(t)he entire amount of the settlement agreements with Boeing were intended to be used for the benefit of the Lion Air Clients, either as a (*sic*) cash or as a payment for the attorneys' fees and other costs required to obtain that cash." *Docket No. 1*, ¶311.  In that allegation, Edelson concedes the legitimacy of payment of the Lion Air Families attorneys' fees – the predicate upon which CAL II was paid.

1   acknowledged earned fees only; and were received prior to the time Girardi Keese possessed the

2   settlement proceeds and could direct them – or misdirect them – anywhere. Thus, Edelson's conclusory

3   allegations are inadequate to "raise its right to relief above the speculative level." *Twombly*, 550 U.S. at

4   555.

5       Edelson's Fifth Cause of Action must be dismissed pursuant to Federal Rule of Civil Procedure

6   12(b)(6).

7                                     **C.**
8       **PLAINTIFF CANNOT MAINTAIN ITS CLAIM BROUGHT PURSUANT TO
        CALIFORNIA BUSINESS AND PROFESSIONAL CODE §17200 ET SEQ.**

9       Edelson's Seventh Cause of Action seeks restitution and disgorgement of CAL II's profits, *Docket*

10  *No. 1*, ¶337, based upon allegation that Girardi Keese's repayment of the loans made by CAL II

11  constitutes an illegal fee sharing agreement.  According to the Complaint, "It is unlawful for an attorney

12  or law firm to share attorneys' fees with a non-lawyer. California Attorney Lending is not an attorney or a

13  law firm and its CEO Paul Cody is not licensed to practice law in any jurisdiction." See, e.g., *Docket No.*

14  *1*, ¶¶ 329, 330. This over-simplified argument is, frankly, non-sensical.

15      California's Unfair Competition Law (the "*UCL*") is codified in Business and Professional Code

16  Section 17200 et seq.  The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent

17  business act or practice and unfair, deceptive, untrue or misleading advertising." *Business & Professional*

18  *Code* §17200. By proscribing "any unlawful" business act or practice, the UCL borrows rules set out in

19  other laws and makes violations of those rules independently actionable. *Cel-Tech Communications, Inc.*

20  *v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, at 180 (1999).

21      With exceptions not applicable here, Rule of Professional 5.4(a) of the Rules of Professional

22  Conduct makes it illegal for lawyers to share fees with non-lawyers.[6] But there is nothing in CAL II's

23  creditor relationship with Girardi Keese that constitutes "fee sharing" prohibited by the Rules.  This

24  reality is expressly recognized in Comment B to Rule 5.4 of the Rules of Professional Conduct:

25          Paragraph (a) … does not prohibit payment to a nonlawyer third-party for goods and
26          services provided to a lawyer or law firm; however, the compensation to a nonlawyer

27  ─────────────────────────
    [6]   See, *Rules of Professional Conduct* 5.4(a) ("A lawyer or law firm shall not share legal fees
28        directly or indirectly with a nonlawyer or with an organization that is not authorized to practice
          law … ,")

third-party may not be determined as a percentage or share of the lawyer's or law firm's overall revenues or tied to fees in particular cases or legal matters.[7]

The Complaint even concedes that the payments made to CAL II were payments made to Girardi Keese's lender, in repayment of loans made to Girardi Keese. *Docket No. 1*, ¶93. Repayment of a valid and binding loan obligation does not constitute fee sharing – even if fees earned are the source of repayment. True to form, Edelson mischaracterizes the loans in shady terms – that the repayment terms required the firm to pay 50% of all its fees in covered cases. *Id*. But indisputable terms of the loan agreements executed by Girardi Keese make clear that was not the Firm's obligation. See, *Cody Declaration*, ¶11 and Exhibit A. Girardi Keese's agreements with CAL II were absolute and unconditional, and required the firm to repay the entire amount borrowed, together with interest at the applicable rate. *Id*. The payment obligation owed to CAL II was in no way determined as a percentage or share of Girardi Keese's overall fees, nor was the obligation tied to fees in any particular case. *Id*.

The Ninth Circuit has recognized that this Court "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Sciences. Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, it is flatly contradicted by the terms of the agreement referenced. Edelson's Seventh Cause of Action is based on an allegation that is "no more than a legal conclusion" and is "not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 679; *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016). Accordingly, because it does not state a plausible legal claim, it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### D.
### PLAINTIFF HAS NOT SATISFIED THE CONDITIONS PRECEDENT TO ASSERTING A CLAIM FOR DAMAGES UNDER THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT.

Edelson's Eighth Cause of Action seeks damages against CAL II under Sections 1770 and 1780 of the California Consumer Legal Remedies Act. See, *California Civil Code* §1750 et seq. The Act sets forth certain conditions precedent to filing an action, which are applicable to claims brought in both state and federal courts. *Cork v. CC-Palo Alto, Inc*., 534 F. Supp. 3d 1156 (ND Cal 2021). Because Edelson has completely failed to comply with explicit conditions precedent to asserting its claim, and because the

---

7       https:www.calbar.ca.gov/portals/0/documents/rules/Rule_5.4.pdf (accessed Sept. 18, 2022).

factual allegations it makes in support of the claim do not make out a plausible right to relief, the claim must be dismissed.

### 1.   Edelson Did Not File the Venue Affidavit Required by the CLRA.

The CLRA requires a plaintiff to file an affidavit "concurrently with the filing of the complaint," stating facts showing that the action was commenced in a county described in the Act as a proper venue for trial of the action. *California Civil Code* §1780(d).[8]  In mandatory language, the Act dictates, "When a plaintiff fails to file the affidavit required by the Act, **the court <u>shall</u>**, upon its own motion or upon the motion of any party, dismiss the action without prejudice." *Id*. (emphasis added).

Edelson failed to file this required affidavit.  As compelled by the mandatory language of the CLRA, this Court must dismiss the claim.

### 2.   Edelson Did Not Serve the Mandatory Pre-Complaint Notice and Demand.

The CLRA also requires that a party who intends to bring an action for damages under the CLRA must "[n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770." *California Civil Code* §1782(a)(1).  The Notice shall be in writing and must be sent by certified or registered mail, return receipt requested.  *Id.*, §1780(a).

Edelson has failed to allege compliance with the foregoing, and, in fact, utterly failed to provide this required notice to CAL II.  Because it has failed to satisfy the plain condition precedent set out the CLRA, this Court must dismiss the claim pursuant Federal Rule of Civil Procedure 12(b)(6).

### 3.   Edelson Does Not State a Plausible Claim for Unconscionability.

California Civil Code §1770(a)(19) makes it an "unfair method of competition and unfair or deceptive act or practice" to "insert () an unconscionable provision in (a) contract." *California Civil Code* §1770(a)(19). Edelson's Complaint simply alleges, in conclusory fashion, that the "provisions of the settlement agreement … that provide for direct payment of a portion of the Lion Air Clients' settlement funds to (CAL II) are unconscionable." *Docket No. 1*, ¶348. Claims must be "supported by

---

[8]   An action for damages brought under the CLRA's provisions may only be brought in a county where the person against whom it is brought resides, where the defendants have their principal place of business or are doing business; or where the challenged transaction or any substantial portion of the challenged transaction occurred.  *California Civil Code* §1780(d).

1  factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a cause of

2  action will not do." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

3        The extraordinarily specious quality of Edelson's claims against CAL II in this Action may be

4  best understood by considering Edelson's unsupported claim that the Lion Air Families' settlement

5  agreements contain unconscionable terms.  Edelson served as co-counsel to the Lion Air Families in the

6  litigation that resulted in those settlement agreements, and served in that capacity because the Lion Air

7  Litigation "[was] to be filed in the Northern District of Illinois" *Docket No. 1*, ¶96, where Edelson

8  maintains its principal place of business. *Id*, ¶24.  The Complaint explains that Edelson's co-counsel

9  agreement required that it "assist in the litigation and settlement process." *Id*., ¶96.  Edelson's Complaint

10  explains that "for many of the Lion Air Clients (all but Multi Rizki), the settlements required approval by

11  Court order because they settled a case brought on behalf of a minor." *Id*., ¶100.  The Complaint itself

12  explains: "The Lion Air Clients' settlement agreements with Boeing included terms by which a certain

13  amount of the settlement funds would be wired directly to (CAL II)." *Docket No. 1*, ¶310, 346.  The

14  Court issued an order approving each of those settlements. *Id*., at ¶100.

15        The import of those allegations is inescapable.  As co-counsel to the Lion Air Families charged

16  with assisting in the settlement process, Edelson advocated before the Northern District of Illinois that

17  the settlement agreements should be approved, and obtained that approval.  Edelson cannot now change

18  course, and allege before this Court that those same settlement agreements were "unreasonably and

19  unexpectedly harsh," "unduly oppressive" or "so one-sided as to shock the conscience." *Sanchez v.*

20  *Valencia Holding Co., LLC*, 61 Cal.App.4th 899, 910-11 (2015) (defining "unconscionability").  See also,

21  *Jackson v. County of Los Angeles*, 60 Cal.App.4th 171, 181 (1997) ("Judicial estoppel prevents a party

22  from asserting a position in a legal proceeding that is contrary to a position previously taken in the same

23  or some earlier proceeding.  The doctrine serves a clear purpose: to protect the integrity of the judicial

24  process."), quoting *Cleveland v. Policy Management Systems Corp.* 120 F.3d 513, 517 (5th Cir 1997).

25        Edelson's claim that the settlement agreements are "unconscionable" defies logic, and is "no more

26  than a legal conclusion" and is "not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 679; *In re*

27  *Tracht Gut, LLC*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016).  In truth, based on Edelson's own advocacy in

28  a previous hearing, the settlement agreements were judicially reviewed and approved.  Accordingly,

{8985876: }                                              21

DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER
VENUE OR FOR FAILURE TO STATE A CLAIM CASE NO. 3:22-CV-03977

1  because it does not state a plausible legal claim, Edelson's Eighth Cause of Action must be dismissed

2  pursuant to Federal Rule of Civil Procedure 12(b)(6).

3  **E.**
**Edelson Cannot Be Awarded Punitive or Exemplary Damages.**

4

5  Edelson's desire to sensationalize its claims is also obvious from its utterly meritless claim for

6  $55 Million in "punitive and exemplary damages." *Docket No. 1* at pp. 59 – 60.

7  Edelson is merely, at best, an assignee, and under California law, assignees cannot be awarded

8  punitive damages.  Punitive damage claims are personal to the one injured, and are not assignable.

9  *French v. Orange County Inv. Corp.* 125 Cal.App. 587, 591 (1932). The California Supreme Court has

10  adopted this rule without limitation. *People* v. *Superior Court* 9 Cal.3d 283, 287(1973); *Murphy* v.

11  *Allstate Ins. Co.* 17 Cal.3d 937, 942 (1976).

12  **V.**   <u>**CONCLUSION**</u>

13  This Memorandum demonstrates that the Complaint herein must be dismissed on both procedural

14  and substantive grounds.  The Northern District of California is an improper venue for the determination

15  of this action, and Plaintiff has failed to satisfy all the conditions precedent to a judicial action on its

16  claims.  Moreover, there is no enforceable claim for Plaintiff to pursue, as assignee, and the allegations of

17  the Complaint itself are frivolous and establish that Plaintiff cannot state any claim resulting in a

18  plausible right to relief.

19  For all the foregoing reasons, this Court should grant an Order dismissing the Complaint as

20  against CAL II pursuant to 28 USC §1391(b)(2) and Federal Rule of Civil Procedure 12(b)(3) and (6).

21  DATED:   September 21, 2022          **WOODS OVIATT GILMAN LLP**

22  By:     /s/ William E. Brueckner_____.
     William F. Savino (admitted *pro hac vice*)

23  William E. Brueckner (admitted *pro hac vice*)
     *Counsel for Defendant California Attorney Lending II, Inc.*

24

25  **PONIST LAW GROUP, PC**

26  By:  /s/ Sean Ponist_____
     Sean E. Ponist

27  Cary D. McReynolds
     Samantha Yu

28  *Counsel for Defendant California Attorney Lending II, Inc.*

{8985876: }                                     22

DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S MOTION TO DISMISS FOR IMPROPER
VENUE OR FOR FAILURE TO STATE A CLAIM CASE NO. 3:22-CV-03977